## PIERCE v. GOLDSBERRY.

PRINCIPAL AND SURETY.—*Extension of Time.*— *Contract.*—An oral agreement by the payee of a promisory note with the principal maker, without the knowledge or consent of the surety whose suretyship is known to the payee, to extend the time of payment during a definite period beyond the maturity of the paper, is valid, and releases the surety, if founded upon a sufficient consideration.

SAME.— *Consideration.*—*Interest.*—The oral agreement of the principal debtor to pay merely the same interest that the note would have borne if the indulgence had been given voluntarily, is a sufficient consideration for such a promise of forbearance.

APPEAL from the Tippecanoe Common Pleas.

FRAZER, J.—This was a suit upon a promissory note against the appellant and another. The principal question before us is whether the second and third paragraphs of the answer were sufficient. The court below held them bad on demurrer. This ruling involved but a single question, to wit, whether an oral agreement by the payee with the principal maker of the note, to extend the time of payment during a definite period beyond the maturity of the paper is valid, the consideration for such further indulgence being a similar agreement by the principal to pay interest at the rate of ten per cent. per annum during the time of extension of payment after maturity, the defendant being merely a surety, which was known to the payee, and the agreement having been made without his knowledge or consent.

At the time of the contract, February 21st, 1866, no greater rate of interest than six per cent. per annum was permitted by law, though that rate was recoverable when the contract was for more. In the case before us, then, the legal effect of the agreement was for precisely the same interest that the note would have borne without the new contract.

It is well settled, that such a contract will, if valid, discharge the surety. It deprives him of the right to pay the

debt at maturity, and then to proceed at once to recover from the principal debtor the amount so paid—and thereby it increases his hazard, in view of the fact that the principal may become insolvent before the lapse of the additional time given for payment. It takes from the surety a right which he had under the contract into which he entered, the exercise of which may be essential to his indemnity.

In the case before us the validity of the contract pleaded seems unquestioned, unless it is not founded upon a sufficient consideration. Is the agreement of the principal debtor to pay merely the interest which the note would have borne, and as might have been required by its terms, if indulgence had been given voluntarily, such sufficient consideration? This inquiry, upon which the highest courts of the several states are not in harmony, is presented for our consideration without the aid of any argument whatever on behalf of the appellee.

This precise question has been determined in the affirmative by the highest courts of New Hampshire, Maine, and Ohio (*Wheat* v. *Kendall,* 6 N. H. 504; *Bailey* v. *Adams,* 10 *id.* 162; *Chute* v. *Pattee,* 37 Maine, 102; *McComb* v. *Kittridge,* 14 O. 348); and in the negative in New York (*Gahn* v. *Niemcewicz's Ex'rs,* 11 Wend. 312). It was also probably intended to decide the question in the negative in *Harter* v. *Moore,* 5 Blackf. 367, though, as will be seen, that case did not necessarily call for a solution of the question.

A little consideration of the history of the law upon this subject and an examination of the question in the light of elementary principles has satisfied a majority of the court that the doctrine as held in New Hampshire, Maine, and Ohio, is correct.

The whole doctrine as to the discharge of sureties by giving time to the principal debtor had its origin in the courts of equity, whence it was finally transplanted into the common law. Sureties are favorites, and will not be held beyond the strict scope of their engagements. In the exigencies of business, men are frequently liable to be called

upon, as an act of neighborly kindness, and without any motive of personal advantage, to become sureties in various ways; and when, in such cases, the principal debtor is overtaken by insolvency, it becomes a question which of two innocent parties shall suffer loss. The utmost good faith is therefore required of the creditor, and the liability of the surety is *strictissimi juris.*

The original doctrine upon the question in hand was declared by Chancellor STILLINGTON, as early as the reign of Edward IV., that when the creditor, without the consent of the surety, gave time to the principal debtor, *by agreement,* the surety was discharged; nor was it required that such agreement should be supported by a consideration. And this seems to have been well settled as the rule in England for ages. 1 Spence Eq. Jurisd. 638. But in times quite modern the doctrine sprung up, as it is now established, that to discharge the surety the agreement to give time must be supported by a consideration. Spence, *supra;* Chit. Bills, 413.

This brief reference to the history of the law, showing its origin and growth, is made for the purpose of exhibiting it as it existed when our ancestors brought it with them to this continent, that it may distinctly appear that nothing of its ancient condition gives any support whatever to the doctrine of the anomalous cases mentioned, which, as we must think, without a very full consideration of the subject, substantially rule, that an agreement to pay interest for the forbearance of money for a definite time is not a sufficient consideration for a promise to forbear, when the original debt bears the same rate of interest. It is true, that if the time had been voluntarily given, the note would have drawn the same rate of interest promised to be paid. But if this be an argument, it assumes that the principal debtor and surety would, in any event, have failed to pay until the lapse of the period of indulgence given by the agreement. It assumes that men will never discharge an interest bearing obligation to avoid the payment of interest, and that it

is not to the debtor's advantage to pay the debt for the purpose of stopping the interest; and, moreover, that it is not beneficial to the creditor to obtain a contract which will continue his investment for a definite period for the sake of the lawful interest. But when it is borne in mind that in every commercial country men and moneyed corporations are constantly seeking to loan money for definite periods, for the profit derived from interest, and that they grow rich by the operation, and that debtors frequently seek the opportunity to pay their interest bearing debts before maturity in order to save interest, it will not be very apparent that where the creditor bars the right of payment to him at the maturity of the obligation, by a new contract, and continues the investment at interest for an additional deffi-nite period, payable at the expiration of that period, he will derive no benefit from the performance of the new contract. The benefit of such a contract to the creditor is, that he continues the loan for a specified time, when without the contract the debtor might lawfully pay at once, and thus stop interest. So that it might as well be contended that an original contract of loan for a given time at lawful interest shall not bind the lender to wait for his money until the lapse of the time stipulated. The consideration for the performance is in the one case precisely as valuable as in the other.

These considerations seem to have been wholly overlooked in both the cases mentioned, which are adverse to the views we entertain. In the case in 5 Blackf. they were not suggested in argument, and the opinion in that case indicates that they escaped the attention of the eminent judge who delivered it. Indeed, that case did not necessarily call for a decision of the question, the pleading being bad, according to authority, for the reason that it did not show that the agreement to give time was for a definite period. There is reason to believe that the question did not receive very full consideration. The authorities do not seem to have been examined, nor was there any argument

which could aid the court. The case in 11 Wend. 312, seems to have been decided upon the authority of *Philpot* v. *Briant*, 4 Bing. 717, and the manuscript case stated in Chitty on Bills, 413, n. (*y*); and it is exceedingly difficult to determine from the opinion in the New York case, or, indeed, in *Philpot* v. *Briant*, the process of reasoning by which the conclusion was reached, if, indeed, it was reached, that the agreement to give time was without consideration. That both cases were correctly determined is obvious enough. In the New York case there was no agreement to give time—and surely that was enough—and in the English case the promise on which the forbearance was given was void by the statute of frauds. Such cases can be of but slight weight, and surely should not control when both principle and respectable authority are found to be adverse to them.

Judgment reversed, with costs; cause remanded, with directions to overrule the demurrers.

ELLIOTT, J., dissented.

*R. P. Davidson* and *W. D. Wallace,* for appellant.

*W. C. Wilson,* for appellee.