Jaqua *v.* Montgomery.

---o---

## JAQUA *v.* MONTGOMERY.

PROMISSORY NOTE.—*Suit by Assignee.—Representations of Maker.*—The maker of a promissory note, not governed by the law merchant, made and delivered to the payee, to enable him to negotiate the note, a separate writing, of even date with the note, as follows:

"BEARCREEK TP., Ind., July 28th, 1865.
"This is to show that the note given by me this day to" A. B. "for $75 is all right and will be paid when it comes due."     (Signed)     C. D.

The note was assigned before maturity to one who was induced to purchase it by reason of said writing, which accompanied it.

*Held* (ELLIOTT, J., dissenting), in a suit on the note by said assignee against the maker, that the latter might impeach the note for want of consideration and fraud in obtaining it.

SAME.—*Forbearance by Assignee.*—The assignee of a promissory note, not governed by the law merchant, to whom it was assigned before maturity, after it became due agreed to extend the time of payment for a definite period, and did so, upon the promise of the maker that, if the assignee would so forbear, he would pay it at the expiration of such period.

*Held* (GREGORY, C. J., dissenting), that this promise of the maker constituted a new contract, binding in law, and capable of enforcement, though the maker had a good defense to the note before its assignment.

APPEAL from the Jay Common Pleas.

FRAZER, J.—The court below sustained a demurrer to the second paragraph of the reply, and this ruling we are called upon to review.

One paragraph of the complaint averred, that the defendant, on the 28th of February, 1865, made his promissory note to one Antisdale, payable in one year, which Antisdale assigned to the plaintiff before maturity; that after it became due, the defendant promised the plaintiff to pay the note on the 1st of September, 1866, in consideration that the latter would give day of payment and forbear to sue until that time; that the plaintiff, in consideration of said promise, so agreed and performed his agreement; that the time for payment has passed, and the defendant has failed to pay, &c. The other paragraph was in the common form upon the note. The answer was in three paragraphs. The first and second of these impeached the note for want of consideration and fraud in obtaining it; for reply to which, the plaintiff, by the paragraph to which the demurrer was sustained, averred, that the plaintiff was induced to purchase the note by reason of a writing of even date therewith made by the defendant and delivered to the payee, to enable the latter to negotiate the note, as follows:

"BEARCREEK, TP., Ind., Feb. 28th, 1865.

"This is to show that the note given by me this day to John S. Antisdale for $75 is all right and will be paid when it comes due.        (Signed) .      J. C. MONTGOMERY."

The appellant argues that the defenses pleaded were insufficient, inasmuch as he took the note before its maturity without notice, and cites cases applicable to commercial paper. They are not applicable to this case, the note sued on not being of that class of obligations.

It is further insisted that the fact alleged in the reply constituted an estoppel. It is familiar doctrine, that where the maker of a note represents to one who he knows is about negotiating for the paper, that he has no defense to it, and upon the faith of such assurance the paper is purchased, he will be estopped from making defense. But that is not quite the case before us. The making of a promissory note imports in law a sufficient consideration, and it is a fair inference from its mere existence that the maker

believes that he is liable to pay it, and that he honestly intends to pay it, when he executes it. When such a note is delivered to the payee, the maker puts it in his power to exhibit all this evidence of a valid obligation and real purpose to pay, to the whole world. He is thus enabled often to impose upon an unwary purchaser. And yet in such a case the consideration of the note may be questioned in the hands of an innocent holder. And if to the ordinary terms of the note were superadded an express declaration of what would otherwise be plainly implied, it would hardly increase the currency of the note in the market; and we suppose it would never be held to work an estoppel. We think that no case can be found which carries the doctrine of estoppel to so great an extent. The fact that the assurance is written on a separate paper, though at the same time, should make no difference. The two instruments are as truly a single transaction as if the contents of both had been embodied in one. We have a plain statute allowing the same defenses to a note in the hands of an assignee that could be made as against the payee, and we do not think it should be rendered nugatory by doubtful estoppels. And yet it must be admitted that the difference is not very marked between this case and one where the maker should, an hour after giving the note, innocently assure a person about to purchase it, that he had no defense to it, not supposing that any existed. In the latter case direct authority would probably compel us to apply the doctrine of estoppel, notwithstanding the statement was made in ignorance of the facts, and under the influence of a recent deception which there had been no opportunity to discover. But in the case before us we are not constrained by direct authority, and there is at least these slight differences between this and the case supposed: here the assurance was given at the same instant with the execution of the note, while there it was afterwards; here it was general and to nobody in particular, there it was special and personal to one about to act and who could not but be influenced by it. We have

doubted upon the question before us and considered it much, but a majority now concur in the opinion that there was no estoppel, our brother ELLIOTT dissenting.

But the reply was nevertheless good enough for a bad answer, and hence there was error in sustaining a demurrer to it, if the answer was bad.

One paragraph of the complaint, as we have seen, counted upon a promise, made after the maturity of the note, to pay at a subsequent day in consideration of forbearance, and alleged such forbearance. If this new promise was valid and supported by a sufficient consideration, it constituted a new contract, binding in law and capable of enforcement. It was not a contract forbidden by law or public policy. Had it then a sufficient consideration to support it? Either a benefit to the promisor or an inconvenience to the promisee constitutes a valuable consideration. Upon the maturity of the note, if there was a valid defense to it, the plaintiff, an assignee, had the undoubted right to go, at once, upon the assignor. This was a valuable right, and its surrender or waiver would be a sufficient consideration for the new promise of the defendant. There would be plain injustice in allowing the defendant to attack the validity of the note at the end of the period of additional credit given in consequence of his new promise, and after he had, upon the faith of that promise, led the plaintiff to forego his remedy against the assignor. If he might thus disregard the new promise, he would, without incuring liability, have inflicted upon the plaintiff the injury of delay, to which might also be added ultimate loss, if loss should occur by such delay in pursuing his remedy against the assignor. The majority of the court, GREGORY, C. J., dissenting, concur in the opinion that the first and second paragraphs of the answer were not good defenses to the second paragraph of the complaint, and that the demurrer to the second paragraph of the reply should have been sustained to those paragraphs of the answer.

Judgment reversed, with costs, and cause remanded, with directions to proceed according to this opinion.

ELLIOTT, J.—The first and second paragraphs of the answer are pleaded to the whole complaint, and I fully concur in the opinion by FRAZER, J., that neither of said paragraphs amounts to a good defense to the second paragraph of the complaint. The note was a valid cause of action in the hands of the plaintiff as assignee; it was regular on its face, and imported, *prima facie*, a sufficient consideration to support it. It was not void, though liable to be impeached for fraud or for the want or failure of consideration; and, if, upon its maturity, the defendant had refused to pay it, because of the matters of defense set up in the first and second paragraphs of the answer, the defense, if true, would have been available, under the statute, against the assignee. But it is alleged in the second paragraph of the complaint, that after the maturity of the note, the defendant, in consideration that the plaintiff would forbear to sue upon it until the first day of September, 1866, promised to pay it to the plaintiff at that time. If the defendant had refused to pay the note at its maturity, and had notified the plaintiff of his defense, the latter would have been at liberty to prosecute an action, immediately, against the defendant and controvert the alleged defense, or he might have proceeded at once against the assignor, and taken upon himself the burden of showing that a suit against the defendant would have been unavailing. By the defendant's promise to pay the note on the 1st of September, 1866, and the agreement of forbearance in consideration of that promise, the plaintiff was delayed in bringing suit, either against the defendant or the assignor, until the expiration of that time. This delay was, of itself, a detriment to the plaintiff, but in addition thereto, he was subject to the risk that the assignor, as well as the maker, might in the meantime become insolvent; and this detriment, inconvenience, and risk, constitu-

ted a sufficient consideration to support the defendant's promise to pay the note at the time agreed upon.

In argument, much stress is laid on the statute, which, in reference to notes of this class, declares that whatever defense or set-off the maker had, before notice of the assignment, against an assignor, or against the original payee, he shall also have against their assignees; but it must be remembered that here the second paragraph of the complaint is based on a promise made by the maker to the assignee, which is supported by a sufficient consideration, and to this promise the matters set up in the first and second paragraphs of the answer present no defense.

But I cannot concur with my brother judges in the conclusion reached by them, that the matters alleged in the second paragraph of the reply do not constitute a valid estoppel. It is alleged in that paragraph, that the defendant at the time of the execution of the note, and for the purpose of assisting the payee in the negotiation or sale thereof, and to induce its purchase, executed and delivered to the payee the following statement in writing:

"BEARCREEK TP., Ind. Feb. 28th, 1865.

"This is to show that the note given by me this day to James S. Antisdale for $75 is all right and will be paid when it comes due. (Signed) J. C. MONTGOMERY."

It is further averred that said statement accompanied said note at the time the plaintiff purchased it of the payee, and that, relying on said statement, the plaintiff was induced to make the purchase in the belief that the note was given for a valuable consideration, that the defendant had no defense thereto, and would pay it at maturity. It is conceded to be a familiar doctrine, that where the maker of a note represents to any one who he knows is about negotiating for it, that he has no defense to it, and upon the faith of such assurance the paper is purchased, he will be estopped from making defense. It is, to my mind, extremely difficult to draw any well founded distinction, in principle, between such a case and the one under consideration.

The prevention of fraud is the peculiar characteristic of the doctrine of estoppels *in pais*. And hence, when one party by words or acts knowingly induces another, who relies thereon, to act in a material matter of interest, the person inducing such action is estopped from denying the truth of his words or acts, even by the assertion of the truth, when to do so would work a fraud or injury to the other.

Here, it is averred that the writing set forth in the reply was given to the payee of the note to enable him to negotiate it, by inducing some one to become the purchaser. True, it was not addressed to the plaintiff by name, but that fact, it seems to me, does not affect the case.

It was not addressed by name to any other person, by which its application might be limited. It was general in its terms, and should be considered, as it was evidently intended, as being addressed to any one who was willing to purchase the note. It is like a general letter of credit addressed to any one who might deal with the person to whom the credit is given. It was given to induce some one to buy the note, and upon the faith of it the plaintiff became the purchaser. It accomplished the purpose for which it was given, and it would be a fraud upon the plaintiff to permit the defendant now to deny its truth.

It is claimed, however, that as the statement was executed at the same time as the note, which, *prima facie*, imported a valuable consideration, they must be taken together as one instrument, and, in that view, that the written statement amounts to nothing more than the note alone imports. This position does not seem to rest on any solid foundation. No importance can be attached to the fact that the instrument set up in the reply and the note were given at the same time. Suppose the plaintiff had been present at the execution of the note, and had then informed the defendant that he was about to purchase it, and had asked if there was any defense to it, and the defendant in reply thereto had made the statement contained in the writing,

and the plaintiff, relying thereon, had then purchased the note, would it be contended that the defendant would not have been estopped from impeaching its validity? The statement was sent forth with the note to be shown to any one who might be willing to become the purchaser, and whether it was negotiated on the day of its date or at a subsequent time, the defendant, by the writing, said to the purchaser, the note is all right, and will be paid at maturity.

Nor can it be maintained that the writing contains nothing more than the note imports. The note contains a promise to pay the sum named at the time stipulated, and, *prima facie*, it imports in law, that it was given upon a sufficient consideration to support the promise. In other words, under the law, the plaintiff was not required to allege in the complaint, and prove on the trial, the consideration for which the note was given, because, in the absence of a showing to the contrary, the law infers a consideration; but still the defendant would be at liberty to show that it was given without consideration, or set up any other valid defense he might have to it, as to which nothing is implied by the note. But the writing goes much further; in legal effect, it not only admits a valuable consideration, but asserts that the defendant had no defense, whatever, to the note. .

It seems to me clear that the reply shows a valid estoppel against the defense set up in the first and second paragraphs of the answer.

GREGORY, C. J.—As stated in the opinion of the majority, I do not concur in the proposition, that the agreement of forbearance charged in the second paragraph of the complaint, renders the answer impeaching the consideration of the note bad on demurrer. If the note was *nudum pactum*, then the agreement of forbearance was without any consideration to support it. This proposition as between the maker and payee will hardly be disputed. A new promise made in consideration of a previous obligation entered into

without any consideration, is not binding on the promisor, even where the obligation is surrendered at the time. *Copp* v. *Sawyer*, 6 N. H. 386; *Hill* v. *Buckminster*, 5 Pick. 391.

But it is claimed that this rule is not applicable as between the assignee and maker of the promisory note in suit. This note is governed by the statute, which provides that "whatever defense or set-off the maker of any such instrument had, before notice of assignment, against an assignor, or against the original payee, he shall have also against their assignees." 1 G. & H. 448, sec. 3. In relation to this kind of paper, the assignee stands in the place of the payee as to every defense existing at the time of notice of the assignment. It is said that this promise to pay the note at the expiration of the time stipulated is binding on the maker for the reason that the assignee surrendered his right of action against his assignor and thereby suffered detriment. Can this proposition be maintained? I think clearly it cannot. The indorser of a note, under our statute, warrants two things: first, that the note is valid and the maker liable to pay it; secondly, that the maker of the note is solvent and able to pay it. *Howell* v. *Wilson*, 2 Blackf. 418.

The indorsee of a note, obtained from the maker without consideration, has a right, as soon as he discovers the imposition, to sue the indorser for having assigned him a note which the maker is not liable to pay. *Id.* The warranty as to the validity of the note is broken at the time it is made. The note is not valid.

Now all that can be claimed for the appellant is, that he relied upon the promise of the appellee and did not (as he might have done) sue the indorser. But the appellant was not legally bound to wait, and his doing so was voluntary on his part, without the consent of the appellee. Indeed, for aught that appears in the pleadings, the appellant may have successfully pursued his remedy against his indorser. There is no averment in the complaint on the subject, and certainly there can be no legal presumption that the appel-

lant refrained from doing that which he had a legal right to do. The assignee was in privity with the assignor; the maker, as to them, was antagonistic. It could not, in any legal sense, be said, that the maker was negotiating for and on behalf of the payee of the note; the former had no interest in the question of liability as between the assignee and assignor. The rule as to valuable considerations is very carefully and accurately stated by Mr. CHITTY and by Judge BOUVIER in his Law Dictionary. The latter states the rule thus: "Valuable considerations are those which confer some benefit upon the party by whom the promise is made, or upon a third party at his instance or request; or from which some detriment is sustained, at the instance of the party promising, by the party in whose favor the promise is made." See title CONSIDERATION, 1 Bou. L. D. 329.

Mr. CHITTY states the rule thus: "The general rule as to the sufficiency of the consideration seems to be, that it may arise either, first, by reason of a benefit resulting to the party promising, or to a third person, by the act of the promisee; or, secondly, by reason of the latter sustaining any loss or inconvenience, or subjecting himself to any charge or obligation, however small the benefit, charge, or inconvenience may be; provided such act be performed, or inconvenience or charge incurred, with the consent, express or implied, of the promiser, or, in the language of pleading, at his request." Chit. Con. 28.

This court, in *Mathews* v. *Ritenour*, 31 Ind. 31, recognizes the rule as stated by Judge BOUVIER.

It is true, that in *Pierce* v. *Goldsberry*, 31 Ind. 52, this court held, ELLIOTT, J., dissenting, that an oral agreement of the principal debtor to pay merely the same interest, that the note would have borne if the indulgence had been given voluntarily, is a sufficient consideration for a promise of forbearance for a definite time; but that was a valid note, based upon a valid consideration.

In the case now before us, there was no new con-

sideration; the pleadings show that there was an oral agree-ment for forbearance for a time fixed.

It is clear to my mind, that if the appellant suffered any detriment in not pursuing his legal remedy against his in-dorser, it was his own act, and not suffered at the instance of the appellee, and that therefore the promise of the lat-ter to pay the note at the expiration of the time fixed was a *nudum pactum.*

I think the majority are very clearly right on the question of estoppel.

The instrument signed at the time the note was executed has not the first element of an estoppel. It is no more than what the note itself imported on its face. It was obtained by the same fraudulent act that procured the exe-cution of the note. It was a part of the same contract and was as much a part of the note as if it had been incorpor-ated in it. It was a statement upon which the appellant had no right to rely. Indeed, I think that such a paper accompanying an ordinary promissory note should have the effect of exciting suspicion that all was not right. It looks too much like the act of the thief in attempting to cover up his crime.

I think the judgment ought to be affirmed.

*J. B. Jaqua, J. W. Headington,* and *A. Jaqua,* for appel-lant.

*J. N. Templar* and *A. M. Templar,* for appellee.