## ROSS vs. HANNAH.

1. Where a debtor is possessed of a pair of work oxen and two horses, he has the right, under the statute exempting certain articles from execution, to elect whether he will retain the oxen, or one, and which of the horses, for the use of his family.

2. Although, in such case, the right may be waived by express declarations, or unequivocal acts—as for instance, the refusal of the debtor to make the election, when required to do so,—it cannot be divested by the mere levy of an execution on one particular article of the property; but the debtor, notwithstanding, may, at any time before the sale, elect to retain the article levied on, without tendering to the officer those, which he had omitted to seize under the execution.

3. If, however, after the levy and before the sale, the debtor should put the articles not levied on out of the officer's way, this would amount to an election to retain them, and determine the right.

ERROR to the Circuit Court of Lowndes. Tried before the Hon. Nathan Cook.

TROVER by the plaintiff against the defendant in error to recover damages for the conversion of a horse. The horse in question was seized and sold by the defendant, as a constable, under an execution for $45, against the plaintiff, who at the time of the levy was in possession of another horse, and a pair of work oxen, the latter of which were claimed by his minor son. The horse levied on was worth about seventy, and the other about ten dollars. On the day of sale the plaintiff for the first time elected to claim the horse levied on, under the statute, and demanded him of the defendant, at the same time tendering to him the other horse, but not the oxen, to be sold in his stead, but the defendant refused to deliver him up, and proceeded to sell. There was some controversy as to whether the oxen belonged to the plaintiff or his son, and *on this point* a charge was asked by the plaintiff and refused, and another given by the court, which it is unnecessary to notice. The plaintiff asked the court to charge the jury, that, conceding the oxen to have been the property of the plaintiff, yet if he elected before the sale to retain the horse levied on, under the statute, the officer had no right to sell him. This charge the court refused to give, but charged the jury that if they found from the evidence that

the oxen were the property of the plaintiff, and that he made no offer to elect until the day of sale, it was incumbent on him to have produced and delivered the oxen at the time of sale, as well as the horse, which he offered to deliver,—particularly if the evidence showed that the horse, offered to be delivered in lieu of the one levied on and sold, was not of value sufficient to satisfy the execution. To the refusal to charge as requested and to the charge given, the plaintiff excepted and now assigns them as error.

J B. STONE, for the plaintiff in error:

1. The officer was informed by the plaintiff in error that he claimed the horse under the statute; he then acted at his peril when he sold him.—The State v. Johnson, 12 Ala. 840.

2. After the plaintiff had made the election to keep the horse that was sold, the officer should not have taken him. The plaintiff waived no rights by not having put in the claim until the day of sale.—10 Ala. 276.

3. The plaintiff did not claim the yoke of oxen, nor the other horse, and it was not for the officer to say what he should keep. The effect of it would be to constitute the officer the judge as to what property should be retained by the family. The right to make this determination belongs to the party, and not to the officer.—9 Ala. 169.

THOS. J. JUDGE, for the defendant:

1. If the plaintiff had not owned one pair of work oxen, in addition to the two horses, he perhaps would have had the right to elect which horse he would retain. But not attempting to make any election until the day of sale, and the horse then tendered, in lieu of the one levied on, not having been of value sufficient to satisfy the execution, and the oxen not having been likewise tendered to the officer—he, the officer, would have been liable to a rule had he not proceeded to sell. Both the horses were liable to levy and sale, as plaintiff owned a pair of work oxen besides, and of course plaintiff had no right to elect which one of the horses he would keep.

2. There was no error in the refusal to charge, and in the charge as given by the court below, relative to the earnings of a minor child being the property of the father. The charge

Ross v. Hannah.

given was in language identical with that used by this court in Godfry v. Hays, 6 Ala. 501.

PARSONS, J.—The plaintiff brought his action of trover to recover damages of the defendant for taking and converting a horse, which the plaintiff claimed under the statute which exempts certain property from sale under execution. The defendant, as a constable, levied an execution against the plaintiff on the horse, and sold him. It appears that the plaintiff at the time had two horses, and that a pair of oxen was in his possession, which was claimed by his son, who was a minor and a member of his family; and the defendant's counsel now contends that the oxen were really the property of the plaintiff. Without deciding this question, as it is unnecessary to do so, we will consider this case as if the oxen were the unquestionable property of the plaintiff. There was no proof that the plaintiff elected to claim the horse levied on until the day of sale, when the constable refused to receive the other horse and return the one levied on to the plaintiff, but proceeded to sell him. The horse sold was of the value of about seventy, and the other about ten dollars. The statute, for the benefit of poor families, exempts from execution, among other things, one work horse, mule, or pair of work oxen. The plaintiff had no mule. We think he had the right to elect whether to retain the oxen or one of the horses; and, in the event of his choosing one of the horses, he had the right to elect which he would keep. This is according to the expressed opinion of our predecessors, in Noland v. Wickham, 9 Ala. 169, with which we are entirely satisfied, although it was, perhaps, not necessary to decide the question in that case. Any other construction of the act, in *this* case, would leave the plaintiff and his family with a horse of the value of ten dollars, and might, in many cases, almost entirely deprive families of the benefit intended by the legislature.

2. The plaintiff by express declarations or unequivocal acts might have waived his right of election, but there were none such. Or if he had refused to make his election when the constable levied, that, we think, would have been a waiver of his right. Then the question is, since this is a valuable legal right, whether the constable can, by a mere levy, deprive the plaintiff of it? We are satisfied he cannot. (See Jordan v. Autry, 10

Ala. 276, which is not precisely in point, however.) It follows that the plaintiff might make the election and claim the horse at any time before the sale; and as he did so, but the constable sold him notwithstanding, it was a conversion for which this action would lie.

It seems that there is a similar statute in Kentucky, and the defendant's counsel refers us to a decision of the Court of Appeals of that State, upon their statute,—(McGee v. Anderson, 1 B. Mon. 187.) The plaintiff there had two mares and a yoke of oxen, and the officer levied on one of the mares, which the plaintiff claimed on the sale day. The court did not deny the plaintiff's right of election under the statute, or hold that it was lost by means of the levy,—but they held in that action, which was trespass, that the officer could not become a trespasser *ab initio*, by refusing to deliver up the mare to the plaintiff, on the day of sale, when he elected to claim her, unless the debtor had tendered to him for sale, in lieu of the mare, such other property as he might, in the first instance, have seized under the execution, and which would be sufficient to satisfy it —or which should be equal in value to the mare that was levied on. In this opinion, so far as it puts the right of election upon the condition of a tender of other property, we cannot concur. This right of election is given impliedly, but freely, by the legislature, without any condition whatsoever, and nothing short of legislative power can now impose one. To speak of the case at bar—if the plaintiff had put his other horse or the oxen out of the officer's way, we should consider that an election to retain them, and consequently he could not afterwards elect to keep the horse that was levied on; but we cannot think that his right of election can be made to depend upon the condition of his carrying the other property and tendering it to the officer. It is obviously unnecessary to decide any other question in this case. It sufficiently appears by the bill of exceptions, we think, that the plaintiff was the head of a family. The judgment is reversed and the cause remanded.

NOTE BY REPORTER.—The defendant, by his counsel, having petitioned for a re-hearing, the Chief Justice delivered the following opinion:

DARGAN, C. J.—The defendant had the right, at the time of the levy of the execution, to require the plaintiff to make his election which of the two horses he would keep, or whether he would retain the yoke of oxen. As he did not do this, and the plaintiff at the time of the levy did not in fact make his election, he had the right to do it on the day of sale, and this right he could exercise without any condition. True, if in the mean time, between the levy and the day of sale, the plaintiff had disposed of the other horse, or the oxen, or put them out of the way, this would be considered as exercising his right to elect; but having done neither, we do not think he was compelled to deliver the other horse and oxen to the constable, as a condition upon which he might elect to keep the horse levied on. We therefore think the petition for a re-hearing should be overruled.