## SCULLY vs. THE STATE.

[INDICTMENT FOR FORGERY.]

1. *Uttering and publishing forged instrument as true; sufficiency of verdict.* Under an indictment for uttering and publishing as true a forged instrument, (Code, § 3165,) it is not necessary that the verdict of the jury should negative the fact that the defendant received the forged instrument from another person, in good faith, and for a valuable consideration; although that fact, if affirmatively found by the jury, would reduce the offense to forgery in the third degree.

2. *Same; venue; accessory before the fact.*—Where a forgery is committed in one county, and, pursuant to a fraudulent combination there entered into between the prisoner and the forger, the forged instrument is uttered and published as true in another county, the prisoner is an accessory before the fact to the offense of uttering and publishing, (Code, § 3526,) and may be indicted for that offense in the county in which it was committed, although all his acts in relation to it were done in the other county.

3. *Charge objectionable for generality.*—A charge which asserts a correct legal proposition, though it may be objectionable on account of its generality, is no ground for a reversal, since the appellant might have protected himself against injury by asking a more specific charge.

FROM the City Court of Mobile.
Tried before the Hon. H. CHAMBERLAIN.

THE indictment in this case was found at the October term, 1863, of said city court, and contained two counts. The first count charged, that Daniel Scully and Timothy Cluny, "having in their possession a certain bill of exchange, whose tenor follows," (setting out a bill for $2,000, dated at Wetumpka, August 18, 1863, drawn by W. T. Hatchett, on Baker, Lawler & Co., Mobile, and payable to A. B. Harwell or order,) "feloniously did falsely make, forge, and counterfeit, and cause and procure to be falsely made, forged, and coun-

terfeited, and willingly aid and assist in the false making, forging, and counterfeiting, on said bill of exchange, an endorsement thereof, whose tenor follows—that is to say, '*A. B. Harwell*'—with intent to defraud." The second count charged, that said defendants, having in their possession a certain other bill of exchange, (setting it out as in the first count,) "on which was written a certain false, forged, and counterfeited endorsement, whose tenor follows—that is to say, '*A. B. Harwell*'—feloniously did utter and publish as true the said last-mentioned false, forged, and counterfeited endorsement of said bill of exchange, then and there well knowing the said endorsement to be false, forged, and counterfeited." The defendant Scully was tried alone, and pleaded not guilty; and issue was joined on that plea.

"On the trial," as the bill of exceptions states, "the State examined A. B. Harwell as a witness, who testified, that he was a soldier in a battalion at Fort Morgan; that he sent home, by his son, for $2,500 to pay for a substitute; that his son returned with $500 in money, and the draft referred to in the indictment; that the defendant came down to the fort from Mobile, and agreed to serve as substitute for that amount; that he was examined and approved by the surgeon and captain, and the latter was proceeding to take from him the usual preliminary declaration, in regard to his age, &c., when the defendant refused to make any, or to bind himself in any manner, until he was paid; that he (witness) then handed him the money and the draft, as payment; that the defendant at first objected to the draft, but, when the captain said that he knew the house of Baker, Lawler & Co., and that he believed it would be paid, remarked that he would risk it, and took it; that he then signed the declaration required by the captain, and went out, while witness remained to receive his discharge, all persons present considering that the transaction was complete; that he (witness) learned from the captain, about a half-hour afterwards, that he could not get his discharge, as the papers must be approved by the general at Mobile, and he was advised by the captain to get back his money and draft; that he then went in search of the defendant, and found him coming from the wharf, the boat having left; that he

informed defendant, and asked him for the money and the draft; that the defendant replied, 'that he had sent the draft to town by Cluny'—'that he thought it was all settled'—'that he would send and have the draft brought back, and would hand back it and the money, and would make it all right.' Said witness further said, that defendant's name was put on the roll by a sergeant, but he was not sworn in, and performed no duty; that he (witness) heard no more of his application for ten or fifteen days, when it came back disapproved; that he went to the defendant, who was then confined by the order of the captain, but could not get either the money or the draft; that he had not since seen the draft, until the day of the trial, but the money was found, on strict search of the defendant's person, and returned to him; that it was concealed in parts of the defendant's clothing, and some of it was sewed up in the lining of his cap; that the draft was not endorsed when he handed it to the defendant, and nothing was said about an endorsement of it; that the boat came down from Mobile every other day, and had been down several times before his application was refused; that the transaction took place between the 1st and 5th September, 1863, and he heard of the refusal about the 15th.

"It was shown that the draft had been in the city of Mobile, in the hands of Patrick Dunn, about the 5th or 6th September, and was then without endorsement; and it was proved to have been paid to said Dunn on the 9th September, the name of said Harwell having then been endorsed on it, and it being then presented to Baker, Lawler & Co. for payment, and paid by them,—they taking Dunn's endorsement thereon. Upon this, Dunn was arrested for the forgery of the endorsement of Harwell's name; and on his examination, the defendant was examined as a witness, and made a statement, which was reduced to writing, and which was proved by the State, and read as evidence to the jury, as follows: "I sent the check to Dunn, by Cluny. It came back to me by the next boat. Cluny brought it back. I sent it up to Dunn to collect the money. It was sent back by him, because it was not endorsed. I sent it back the second time by Cluny. When I sent it the first time, it was

not endorsed. When it came back to me, it was not endorsed. When I sent it back the second time, it was endorsed. I made Cluny endorse it. Dunn came down to the fort afterwards, but was not there at the time of these transactions. At the time I was mustered in, I thought the money was my own. Major Gee said, that the papers would have to go before General Maury; this was after I had received the money and the check. I was authorized by Mr. Harwell to do as I liked with the check. There was nothing at all about the check coming back. When me and Harwell and Cluny were coming out of the door, I said that I did not like the appearance of the check. He said, I had all the money, (all to twenty dollars,) and to do as I pleased with the check—to endorse it, or throw it in the river. That was just after we were leaving the captain's quarters, and after it had just been handed to me. I sent the check up by Cluny. I have received no money of the $2,000. I have not seen Cluny since I sent the draft by him to Dunn for collection, and Cluny was to bring the money down to me. Dunn had nothing to do with it. I sent it to him as a friend, to collect for me. He was to have no part of it.' Harwell said, also, that there was a man in company with the defendant whom he did not know; and a witness for the defendant said it was Cluny. He was not in court, and was said to have absconded. It was admitted, that Fort Morgan, where the transaction took place, was in Baldwin county; and that Dunn, to whom the draft was sent, and Baker, Lawler & Co., who paid it, lived in the city and county of Mobile; and that it came to the hands of said parties in Mobile county.

"The foregoing being substantially the evidence that was adduced, the court charged the jury, at the request of the defendant, that if they believed the forgery was made in Baldwin county, and there delivered to a party to bring to Dunn, in Mobile, to be presented by him, in Mobile, for payment, if delivered as a good endorsement in Baldwin, it is an uttering there, and the offense would be complete there, and the jurisdiction would be in Baldwin county, and not in Mobile, as to the uttering; and that if they believed the draft was delivered to the defendant as his own, for the

purpose of presenting and collecting it for his own use, and
he was told that he might do as he pleased with it,—in such
case, the putting of the payee's name on it, for the purpose
of collecting it, would not make him guilty of forgery. But
the court charged the jury, that although the deposition of
the defendant was evidence before them, they were not
bound to believe it to be true, unless they thought it was
true; that they must take into consideration all the evi-
dence and surrounding circumstances; and that if they
believed there was a confederation and combination between
the defendant and Cluny, to defraud said Harwell, or any
other person, by means of forgery, then, although the name
was written in Baldwin county, and it was presented and
paid in Mobile, the defendant, as well as Cluny, would, by
reason of such combination, be guilty of uttering in Mobile
county, if the uttering was in pursuance of such combina-
tion. To all which charges the defendant excepted."

The jury returned a verdict in these words: "We, the
jury, find the defendant guilty on the second count only."
The defendant moved in arrest of judgment, "on the ground
that the verdict does not ascertain whether the offense, of
which they found the defendant guilty, fell within the second
or third degree, so that it is uncertain what punishment
should, according to law, be awarded against him." The
court overruled the motion in arrest, and sentenced the de-
fendant to five years' imprisonment in the penitentiary.

GEO. N. STEWART, for the prisoner.
M. A. BALDWIN, Attorney-General, contra.

STONE, J.—The second count of the indictment in this
case is based on section 3165 of the Code, which reads as
follows: "Any person who utters and publishes as true,
and with intent to defraud, any forged or counterfeit instru-
ment, or writing, or any counterfeit gold, silver, or other
coin, the forging or counterfeiting of which is declared by
this article to be an offense, knowing such instrument,
writing, or coin to be forged or counterfeited, must, on
conviction, be adjudged guilty of forgery of such instru-
ment, or writing, or of counterfeiting such coin; but, if it

appear on the trial that the defendant received such forged or counterfeit instrument, writing, or coin, of another, in good faith, and for a valuable consideration, without any circumstances to justify the suspicion of its being forged or counterfeited, he must, on conviction, be punished as if guilty of forgery in the third degree."

The forgery charged in the indictment in this case, for uttering which the defendant was convicted, is forgery in the second degree, under section 3158 of the Code. Being convicted of *knowingly uttering* such forged instrument, &c., the law adjudges the defendant guilty of forgery in the second degree, unless it appeared "that the defendant received such forged instrument of another, in good faith, for a valuable consideration," &c. It is here contended, that no judgment of conviction should have been pronounced on the verdict of the jury, because it fails to find whether or not the defendant received the forged instrument of another, in good faith, &c., under the section of the Code above quoted. In support of this proposition, two decisions of this court are relied on—viz. : *Cobia v. The State*, 16 Ala. 781, and *Johnson v. The State*, 17 Ala. 627. See, also, *State v. Montague*, 2 McCord, 257 ; *McPherson v. The State*, 9 Yerger, 279 ; *Kirby v. The State*, 7 Yerger, 259.

With the decisions in the cases of *Cobia* and *Johnson,* *(supra,)* we are entirely satisfied. The statute had divided murder into two grades, and had, in terms, made it the duty of the jury, if they found the defendant guilty, to ascertain by their verdict whether he was guilty of murder in the first or second degree. Hence, a general finding of guilty of murder, without ascertaining the degree, did not authorize the court to pronounce judgment on the finding. The court had no means of determining the degree of the defendant's guilt. The statute under which these proceedings are instituted—section 3165 of the Code—is entirely different in its frame and phraseology. Forgery, under our Code, is divided into three degrees: first, second, and third. Section 3165 embraces forgeries in each of the several degrees; and under its provisions, offenders may be punished under each of the grades, depending on the nature of the instrument forged and uttered. The last clause is

in the nature of a proviso, operating for the benefit of the accused, if he can bring himself within its provisions. Its language is, "if it appear on the trial," &c. Unless it *appear* on the trial, the defendant cannot claim the privilege it confers; and the silence of the record on the question, precludes us from affirming that it did *appear* on the trial. As presenting some analogy to this question, see 1st Waterman's Archbold, 81–2–3, and notes; *Spiers v. Parker*, 1 T. R. 141; *The King v. Hall, ib.* 320; *The King v. Earnshaw*, 15 East, 456; *Steel v. Smith*, 1 B. & Ald. 94.

We hold, that the verdict in this case justified the judgment rendered.

[2.] The last charge of the court, to which exception was taken, when properly construed, asserts only that, if the forgery was committed in Baldwin county, and if defendant and Cluny, in order to defraud Harwell or another, there combined to accomplish their purpose, by having the said forged instrument uttered in Mobile county; and if, pursuant to such combination, the forged instrument was uttered in Mobile, then the defendant could be convicted of uttering in Mobile county, although all his acts in connection therewith were done and performed in Baldwin county. The facts supposed in the charge would clearly constitute the prisoner an accessory before the fact in the crime of uttering the forged instrument; and inasmuch as accessories before the fact are made principals by the Code, this charge is free from error.—Code, § 3526. See, also, *Bishop v. The State*, 30 Ala. 34; *People v. Rathbun*, 21 Wend. 509.

[3.] The charge of the court which instructed the jury, that they were not bound to believe certain evidence before them (the deposition of defendant) to be true, asserted but a truism, and is free from error. We are not able to perceive that this charge was so framed as to mislead; and, if it was so general as not to satisfy the wishes of the accused, or the wants of his case, it was his privilege to ask a more specific charge.

Judgment of the city court affirmed.