## BROOKS *vs.* MARTIN.

[ACTION ON PROMISSORY NOTE.]

1. *Estoppel ; what estops the maker of a promissory note from making defense against it.*—If the maker of a promissory note tells one seeking to trade for it, and desirous to know if he has any defense against it, that it is " all right," he will not be permitted afterwards to dispute this admission, when sued on the note by the person to whom such admission was made. This is such an admission as estops the maker from denying that the note is " all right," if the facts upon which the subsequent defense is rested, existed at the time of making such admission.
2. *Same.*—Such admission is good against the maker of the note, if it be negotiable, not due, and unprotested, whether it be false or true, or fraudulent or innocent, if it be so made as to have a tendency to mislead, or deceive, and does have this effect.
3. *Widow ; what entitled to, out of estate of deceased husband, what become her absolute property.*—The widow is entitled to one work horse out of the estate of her deceased husband, and after she has made the selection of such horse, she becomes the absolute owner of it, as much so as she is of her wearing apparel, and she may sell it, or otherwise dispose of it, as she pleases.
4. *Same ; when selection by widow must be made.*—There is no time appointed by law, at which the widow is bound to make such selection of such work horse. So it is made within a reasonable time after the death of the husband, it may be made before, or after, administration is granted. When once made, the widow is bound by it.
5. *Same ; when greater indulgence should be shown widow.*—If there is no will, the widow, in making such selection, is entitled to the greater indulgence. She may select any horse belonging to her husband's estate, which she may be able to subject to use, in the business or convenience of herself or family, which can be reasonably classed among work horses.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. H. D. CLAYTON.

The facts appear fully in the opinion.

W. C. OATES, for appellant.
F. M. WOOD, *contra.*

[No briefs came into the reporter's hands.]

PETERS, J.—This was an action of debt, by summons and complaint, commenced in the circuit court of Dale county, in this State, on the 22d day of January, 1867, by the appellant, Brooks, as plaintiff, against Martin, the appellee, as defendant, and founded on the following promissory note, viz: " $150 00. By the twenty-fifth of December next, I promise to pay Martha Goff, or bearer, the sum of one hundred and fifty dollars in gold, or its equivalent. This, the 25th December, 1865."

(Signed,) B. B. MARTIN."

On the trial, it was shown that Mrs. Goff was the widow of Warren Goff, deceased, and that said note was made payable to her, and it was given for a horse sold by her to Martin, after her husband's death; that Martin took possession of the horse, under the sale; the horse belonged to the estate of the deceased. These facts were all known to Martin when he made the purchase. Before the note fell due, and while the horse was in the possession of Martin, under said sale, the appellant, Brooks, proposed to purchase said note from Mrs. Goff. But before concluding his purchase of the note, he " came" to Martin and informed him that he was about to trade for the note, and asked him if he had any defense against it, and Martin replied, that the note was " all right." But at that time, Martin did not know that he had any defense. Whereupon, the appellant, Brooks, traded for the note. This was a considerable time before its maturity. A short time before the maturity of the note, and after Brooks had traded for the note, Wiley Goff administered on the estate of said Warren Goff, deceased, and demanded the horse from Martin, as belonging to the estate of said deceased. And thereupon Martin

gave up the horse to said administrator. This occurred after Martin had told Brooks that the note was "all right." The administrator sold the horse as the property of the deceased. Upon this proof, the court charged the jury, that if they believed the evidence, they must find for the defendant, Martin. To this charge the plaintiff, Brooks, excepted. And then the plaintiff, Brooks, asked the court to charge the jury, that if they believed the evidence, they must find for the plaintiff; which charge the court also refused, and the plaintiff again excepted. And he now brings the case here by appeal, and assigns for error, the charge as given, and the refusal to charge as asked.

There can scarcely be a reasonable doubt that the words used by Martin, in answer to Brooks' inquiry about the note, were calculated to mislead and deceive, if they turned out to be untrue. It is difficult to conceive what would make a note "all right," to one who is seeking to purchase it, unless it is such a note as is collectable. Who would call a note "all right" that could not be collected by suit, or that would not be paid at maturity, if the party making it, was able to pay? The import of the words used, was that there was no defense to the note, and if purchased it would be paid at maturity, if the maker was able. This would make it "all right," and nothing short of this would have that effect. Had there been a suit pending on the note, between Brooks and Martin, and the latter had come into court and pleaded that the note was "all right," the court could not have refrained from giving judgment against him. Now, by his words, he puts in this plea before suit is brought, and the law will not permit him to withdraw it, after suit is brought. These words amount to an admission, that Martin can not take back without inflicting an injury upon Brooks, who had acted upon it. "It is well settled," says this court, in a former decision, upon a question very similar to this, "that admissions which have been acted on by others, are conclusive against the party making them, in all cases between him and the other person, whose conduct he has influenced. Nor is it material whether the admission is expressly made, or is to be inferred from the conduct of the party. And in the operation of

this rule, it is unimportant whether the admission is true or false, made fraudulently or innocently, it being the fact of another's having acted on it, that renders it conclusive." *McCravey, Ex'r, v. Remson*, 19 Ala. 430, 436. Here, to say that the note was "all right," was to admit that it was without defense, and would be paid by the maker at its maturity. It was commercial paper, and if it was less than this, it could not be "all right," in any merchantable sense. It was in this sense, that Brooks inquired about it. It was negotiable, was not due, and had not been protested for non-payment. Such a declaration and admission in reference to it, by the maker, was the highest possible recommendation of its marketable value. And when the maker made this admission, he knew all the facts upon which the validity of the note depended. He knew precisely what is now in his plea, and if he knew the law, as he was bound to know it, he was not ignorant of the effect of these facts upon the validity of the note itself. He knew that the widow, as such, could not sell the property of her deceased husband, so as to convey a good title to the purchaser, against the husband's legal representative, except, possibly, under very peculiar circumstances. Yet, he was willing to declare to a purchaser, that the note was "all right." If he is permitted to do this, and then deny it, the law would aid him in committing that which has all the effects of a deceit or a fraud. This the law will not permit. This is the principle laid down in *Clements v. Loggins*, by this court more than twenty years ago, and it has, from that day to this, been undisputed law.—2 Ala. 514, 518.

But besides this, it does not appear from the facts embodied in the bill of exceptions, that Martin was under any legal obligation to give up the horse, which was the consideration of the note, upon the demand of the administrator of Goff's estate. It is not shown, that there were any children or other distributees of the estate of Goff, deceased, except the widow. Mrs. Goff was entitled to one work horse out of the estate of her deceased husband. That is, one work horse which belonged to his estate. And as soon as she made her selection of such horse, it became absolutely her own property, as much so as her wearing

apparel; and she could sell it or dispose of it, as she pleased. The law has appointed no time for this selection, which would compel her to wait until after administration, to make it. But when it is once made, she is bound by it. Revised Code, § 2061, ch. 4, Co. Litt. 146. A work horse, in the meaning of this highly beneficial statute, is any horse that the widow might be able to use in the business, or convenience of herself or family; and she is entitled to be treated with the greatest indulgence in making her selection.—*Allman v. Gann*, 39 Ala. 240; *Ross v. Hannah*, 18 Ala. 125. The administrator could not have recovered the horse in question from the widow, had she chosen to retain it, under the statute. Her title was protected by law, and her vendee had the right to stand in her shoes. If she had a good title in herself, she could convey a good title to him.

The learned judge, therefore, erred in both his charges, as shown in the bill of exceptions. The judgment in the court below is reversed, and remanded for a new trial.