B. F. HAMMETT, Appellant, v. MARY BARNUM, Respondent.

St. Louis Court of Appeals, April 10, 1888.

1. PROMISSORY NOTE—MAKER'S ESTOPPEL BY ADMISSIONS.—Where the holder of a promissory note was induced to purchase it for value, before maturity, by the maker's statements to the effect that the note was all right and would be promptly paid when it became due, the maker is estopped from setting up in defence any alleged equities arising from transactions with former holders, although such purchaser is the original payee named in the note.

2. —— CONSIDERATION—BURDEN OF PROOF.—A negotiable promissory note imports a consideration, and the burden of proof is on the party resisting its collection, to show that none was given.

APPEAL from the St. Louis Circuit Court, HON. LEROY B. VALLIANT, Judge.

*Reversed and remanded.*

CHRISTIAN & WIND, for the appellant : If Hammett bought the note upon the admissions made by Barnum that the note was given for a valuable consideration, and that the advertisement was made without her authority, and that she would pay the note when it became due, Barnum is estopped from now saying that it was procured by fraud. *Newman v. Hook*, 37 Mo. 207 ; *Chouteau v. Goddin*, 37 Mo. 229 ; *Justice v. Lancaster*, 20 Mo. App. 559 ; *Savings Ass'n v. Morrison*, 48 Mo. 273 ; *Bank v. Gay*, 63 Mo. 33 ; *Austin v. Loring*, 63 Mo. 19.

SIM. T. PRICE and D. D. FASSETT, for the respondent : Between the original parties to a negotiable note the consideration may be inquired into. *Klein v. Keye*, 17 Mo. 326. A transfer of a negotiable note by delivery gives title subject to the equities between the original parties. *Patterson v. Cave*, 61 Mo. 439. A note, negotiable in character, but transferred without endorsement, is open to all the equities of a non-negotiable instrument, or to such as it would have been in the hands of the original parties. *Weber v. Orten*, 91 Mo. 677. It is settled in this state that a party to whom negotiable paper is transferred before maturity, merely as security for a preëxisting debt, takes it subject to all equities existing between the original parties. *Terry v. Hickman*, 1 Mo. App. 123. If the note were invalid as between maker and payee, the payee could not himself by purchase from a *bona-fide* holder, become a successor to his rights, it not being essential to such *bona-fide* holder's protection to extend the principle so far. 1 Daniel Neg. Inst., sec. 805. If the payee of the note was the agent of the real party in interest, he could not become the owner of the note so

as to be held a purchaser without notice of the transaction in which the defence inhered. 1 Dan. Neg. Inst., sec. 805; *Boit v. Whitehead*, 50 Ga. 76. No man can set up another's act or conduct as the ground of an estoppel, unless he has himself been misled or deceived by such act or conduct, or if he knew or had the same means of knowledge as to the truth of the statement as the other party. *Bales v. Perry*, 51 Mo. 449. Nor can an estoppel *in pais* be invoked where the party sought to be estopped was not apprised of his rights, nor unless the act of the party relied on as an estoppel, was done with the intent that the other party should act upon it, and the latter was induced thereby to change his relation to the subject-matter thereof to his injury. *Burk v. Adams*, 80 Mo. 504. The party claiming the benefit of the admission must show that his action was influenced by it before he can set it up or rely upon it. *Manks v. Belden*, 80 Mo. 639; Herman on Estoppel, 337; *Acton v. Dooley*, 74 Mo. 67. Conduct of one induced by fraud of another cannot be pleaded by the latter as an estoppel. *Gray v. Gray*, 83 Mo. 106; 1 Daniel Neg. Inst., sec. 861. And so the holder will not be protected if he knew of any illegality in the instrument. 1 Daniel Neg. Inst., sec. 861; *Watson v. Hoag*, 40 Iowa, 143. A party relying upon an estoppel in order to recover against another who has a defence, equity only requires that he should be indemnified the sum he has paid on the faith of the defendant's representation. 1 Daniel Neg. Inst., sec. 661; *Campbell v. Nicholls*, 33 N. J. L. [4 Vroom], 88.

PEERS, J., delivered the opinion of the court.

On the twenty-second day of June, 1885, the defendant made, executed, and delivered her promissory note as follows:

"$1000.00.                     St. Louis, June 22, 1885.

"Nine months after date I promise to pay to B. F. Hammett or order, one thousand dollars, value received, with interest from date at the rate of six per centum

per annum. Negotiable and payable without discount or defalcation.    (Signed)        Mary Barnum.''

To better secure which the defendant made a trust deed on property situated on Sixth street, near Myrtle street, in the city of St. Louis, to Stephen Sealy, as trustee, for the benefit of Hammett, the payee in the note. Default having been made in the payment of the note, this action was begun under the statutes (Acts 1877, p. 351) to foreclose the deed of trust, the petition being in the usual form.

The defendant filed her answer, in which she admitted the execution of the note and deed of trust described in the petition, and that said note was past due and unpaid. As a defense she alleges that said note and deed of trust were executed by her and delivered to plaintiff to be by plaintiff held for the sole purpose of securing and indemnifying one Newberry and Malone against loss by reason of Newberry and Malone having furnished for the defendant a bail bond for the appearance of John Jackson and Thomas Jackson, to answer to a charge made against said John and Thomas Jackson by a warrant issued by one Turner, a justice of the peace for the county of Jefferson, in the state of Iowa ; that at the time of the execution and delivery of said note and deed of trust by defendant to plaintiff, plaintiff well knew the fact to be that said note and deed of trust were executed and delivered by defendant to plaintiff to be held in trust for the sole and only purpose of indemnifying said Newberry and Malone for any sum of money that said Newberry and Malone should have to pay by reason of furnishing bail as aforesaid for the appearance of said John and Thomas Jackson, and that plaintiff well knew that defendant had received no consideration for said note and deed of trust other than the furnishing of said bail for said John and Thomas Jackson as aforesaid.

Defendant charges the fact to be that said Newberry and Malone have not, nor has either of them, sustained

or paid any loss by reason of having furnished said bail for the appearance of said John and Thomas Jackson for which said note and deed of trust can be held as indemnity. Defendant says that plaintiff has no interest in, or title to, said note and deed of trust other than as trustee for said Newberry and Malone, and that the plaintiff's effort to enforce the payment of said note and deed of trust is a fraud upon the rights of defendant, and a violation of plaintiff's duty as trustee, holding said note and deed of trust for the purpose aforesaid. She then asks for strict proof of loss, if any, by Newberry and Malone for which the note and deed of trust can be held as indemnity, and upon an offer to pay into court any such loss, asks that the note and deed of trust be cancelled and surrendered.

To this answer the plaintiff filed his replication charging that the two Jacksons were arrested and held in the state of Iowa under a charge of felony; that the defendant was a friend and associate of said Jacksons, and was interested in having them released on bail; that, under the laws of the state of Iowa, before security will be taken on a bail bond in criminal proceedings, he is required to be the owner of real estate in said state; that Malone was also a friend and associate of said Jacksons and the defendant; that Newberry was the owner of valuable real estate in the state of Iowa; that the said Malone agreed to purchase said real estate from said Newberry for the sum of five hundred dollars, and as security and payment was to give this note of Mary Barnum, secured by deed of trust on the premises described in the original petition; that, in pursuance of said contract, the said Newberry did deed said real estate to said Malone, who afterwards conveyed it to one Sparks, in the state of Iowa, who afterwards became the bondsman of said Jacksons charged with felony aforesaid, who were friends and associates of the defendant and said Malone; that, by the arrangements between defendant Barnum and said Malone, said Barnum agreed and did execute the note and deed of trust as aforesaid

for the sum of one thousand dollars, five hundred of which was the property of said Malone ; that, without plaintiff's knowledge or consent, and at the sole request of said Newberry, the note and deed of trust were made and executed to plaintiff, and the same was afterwards put in his hands as security for debts then due him, and afterwards to become due from Newberry ; that afterwards Newberry and Malone were desirous of disposing of said note, and offered to sell it to plaintiff; that defendant confessed that the note was for a valuable consideration, executed, and delivered, and that she would pay the same when due ; that upon such representations and statements of said defendant, plaintiff purchased the note from Newberry and Malone, paying value therefor.   The acts and conduct of the defendant in inducing plaintiff to buy the note are then set out, and plaintiff insists that defendant is estopped from setting up the defence in her answer.

The case was submitted on the answer and replication to the court, and a verdict entered for the defendant, from which the case comes here by appeal.

The testimony in the case shows the two Jacksons to have been in jail in Iowa.   Barnum, the defendant, and Sealy, the trustee, seem to have been called on to furnish bond for the appearance of these men to answer the crime with which they were charged and held.   In the state of Iowa a bondsman, to be acceptable, must be a resident of, and a real estate owner in, the state, and knowing no one there, it was proposed that the defendant qualify some one in that state to act as bondsman. Newberry, who lived in Illinois at the time, but who, it seems, owned some mill property in Iowa, which was mortgaged, induced Malone to go up there, and, if possible, dispose of Newberry's equity of redemption in the property.   Malone went and in a short time informed Newberry that he could dispose of the Iowa property so as to get for Newberry five hundred dollars, but he was not to have cash, but a note secured by a deed of trust

on real estate situated on Sixth street, in St. Louis, Missouri. After Newberry had looked at this property, he agreed to take the note. Thereupon, the defendant made the note and deed of trust in question, five hundred dollars of which was to go to Newberry, and the other five hundred to Malone to pay him, we infer, for "working up" the trade. The note and deed of trust were made payable to the plaintiff and were delivered to him to hold for the joint benefit of Newberry and Malone. Newberry, in the meantime, made a deed in blank to his Iowa property, and gave it to Malone and Sealy, the latter, it seems, being a close friend to Barnum, the defendant. What disposition was made of this deed the testimony does not show, but the Jacksons were released from jail in Iowa shortly after the delivery of the deed to the property in that state. Sealy delivered the note in question and the deed of trust to Newberry, and the same was put by Newberry and Malone into the hands of Hammett, where it remained for several weeks. Newberry and Malone, in the meantime, were trying to sell the note. The defendant was informed of the desire to sell the note, and at once advertised that the same had been given without consideration. Hammett seeing or hearing of the advertisement informed Newberry and Malone of that fact and surrendered the note either to Newberry and Malone or their attorney. The attorney notified the defendant and when she was spoken to about the matter said she had received nothing for the note, to use her own words, "in God's earth." She said she had furnished bond for her friends in Iowa, but she did not think there had been a conveyance of property to get that done. The attorney then said if that was the case he would have the conveyance (from Newberry) set aside and the bail bond released. After that, Sealy and Malone called to see the attorney several times, and represented that Barnum did not intend to say that she did not understand what the note was given for, that she in fact did know all about it, and would so state to the attorney.

Soon after this, Barnum, Sealy, and one of the Jacksons came to the attorney's office and stated that they came so Barnum could say that she understood all about the note, what it was given for, and that she would pay it when it became due. When told that she did not seem to understand much about it when there before, she said: "I did not then, but do now;" that "she thought that it was claimed that the note was due and must be paid, but as she now understands is the case, the note is not due for nine months; that the note was advertised without her authority and that she had received a good consideration for it and would pay it promptly when it became due."

This statement was made in the presence of two reputable witnesses who testified to the fact.

She was fully informed that Newberry had conveyed his Iowa real estate and that the only consideration he had received for it was the note and deed of trust, and by the conveyance of the Iowa property, her friends had been able to procure bail; that if there was to be any trouble about the matter, proceedings would be taken to have the conveyances made by Newberry set aside, and that would of necessity cause the Jacksons to be surrendered on the bond. It was then that she said that she "would pay the note and that it was all right."

The attorney reported to Newbery and Malone what she had said and informed them that the note could be sold to any one who would buy such paper. After a number of efforts were made to sell to others, Hammett bought the note. Nothing further was heard from Barnum until after this suit was commenced.

There is no evidence that Newberry ever received a cent for his property, except this note. There is no evidence that at the time Newberry made the conveyance he had ever heard of the Jacksons, or knew for what purpose the conveyance of the mill was made; there is no evidence that Malone and Newberry had any agreement with any one to furnish bail for the Jacksons, or that either ever furnished such bail; there is no

evidence that Barnum or her friends put the note in Hammett's hands to be held by him to secure Newberry and Malone against loss on account of furnishing bail for the Jacksons.

The plaintiff insists that under the pleadings and the evidence he was entitled to a decree, and assigns for error the refusal of the trial court to so declare. He also complains of the court in admitting incompetent evidence for the defendant and rejecting competent evidence offered by the plaintiff.

It is not deemed necessary in determining this case to discuss the many questions and points which the learning, ingenuity, and industry of counsel have presented at the trial, or before this court, in argument and by brief. The question which decides the whole case, and the real issues between the plaintiff Hammett and defendant Barnum, is a single one, and the mass of testimony that was adduced before the trial court, upon the theory of defendant. Barnum, that there was a failure of consideration, that Hammett occupied, the position of trustee as to her, and also that he purchased the note sued on in full view of all the equities between her and the parties with whom he dealt, should not be permitted to confuse us in our determination of the rights between these two parties, Hammett and Barnum. Sealy is a mere nominal party and need not be further considered except as a witness.

This note was made payable to plaintiff without his knowledge, nor does it appear (except by hearsay) that he yet knows anything about the purposes for which it was executed. He does not know the defendant, nor does it appear that he knew anything further than that the maker was raising some question about the consideration of the note. At that time he held the note as the friend or trustee of Newberry and Malone. He immediately, upon hearing of the advertisement, handed the note to them saying he did not want to be mixed up in any dispute about it. Afterwards when Mr. Christian, who acted for plaintiff in the subsequent purchase of

the note, was informed by the defendant maker that the "note was all right and would be paid when due," plaintiff purchased the note and became the owner. What better evidence could the most cautious or prudent man have asked than the positive statement of the defendant maker, that *"the note was all right, was for a valuable consideration, and would be paid when due"*? If such a statement, coming from the maker of the note, does not set at rest the question, in a case where want of consideration is pleaded, then what would? As between a maker and a purchaser, if such statements, upon which the purchaser, or another for him acted, would not estop the maker from setting up want of consideration after the purchase had been made, then we cannot conceive any statement that could.

It matters not in this case that Christian, who was also attorney for Newberry, said he would proceed to protect Newberry by having the Iowa sale set aside. That was only what he considered to be the best remedy of his client, who must suffer if this note were repudiated by the defendant ; it was not a threat, so far as this plaintiff was concerned, for it does not appear by the record, that the plaintiff, at this particular time, contemplated purchasing the note. There was nothing on the face of this note and deed of trust to indicate that it was not issued regularly, and for the purpose of standing the test of any negotiable note set afloat by its maker. The defendant not only tells plaintiff, through his agent, that the note was "all right," but repeats the statement in the presence and hearing of other witnesses. How could the note be "all right" if it could not be collected on suit? Nothing short of its being paid on maturity, or its being collected by law, could possibly make it "all right." Bigelow on Estoppel, 563 ; *Justice v. Town*, 20 Mo. App. 559 ; *Union Savings Ass'n v. Kehlor*, 7 Mo. App. 163 ; *Weyh v. Boylan*, 85 N. Y. 394 ; *Lee v. Turner*, 89 Mo. 493 ; *Jaqua v. Montgomery*, 33 Ind. 36 ; *Brooks v. Martin*, 43 Ala. 360.

Defendant says the note was for a valuable consideration and that it would be promptly paid at maturity. It can hardly be necessary, in view of such facts proved by all parties present, to look up authorities to show that defendant cannot now prove the falsity of her statements after they have been acted upon by plaintiff or his agent. Clearly defendant was estopped, and the plaintiff was entitled to his decree.

We have so far discussed the case on propositions presented by the argument of counsel. Beyond this, however, the decree of the court dismissing the bill is wholly unsupported by the evidence. The execution of the note, which is a negotiable promissory note, by the defendant is admitted. The note thus executed imports a consideration both under the statute and by the law merchant. The burden of proof was on the defendant to show want of consideration. This she has wholly failed to do.

The judgment is reversed and the cause remanded with directions to the trial court to enter a decree for plaintiff in accordance with this opinion. The other judges concurring, it is so ordered.