# Brown v. First National Bank of Tuscaloosa.

### Action on a Promissory Note.

1. *Promissory note; when negotiable instrument.*—A promissory note made payable at "Tuscaloosa Fence Factory," is, under the statute (Code, § 1756), a negotiable instrument, governed by the commercial law; and the purchaser of such a note before its maturity, in the usual course of business, for a valuable consideration, without notice of any defenses thereto, is a *bona fide* holder for value; and as such takes the note free from all legal and equitable defenses to which it may have been subject prior to his purchase.

2. *Same; estoppel.*—In a suit by a *bona fide* holder of a promissory note, which is made payable at a certain named place, against the maker thereof, the defendant is estopped from denying the existence

of such a place as the one designated in the note as the place of payment.

3. *Same; inadmissible parol evidence.*—In a suit by the *bona fide* holder of a promissory note, payable at a certain named place, against the maker of such note, parol evidence, that there was, in fact, no such place as the designated place of payment, is inadmissible.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

This was an action brought by the appellee, the First National Bank of Tuscaloosa, against J. Wick Brown; and counted on a promissory note. The facts of the case are sufficiently stated in the opinion.

The defendant offered to introduce evidence tending to show that there was no such place as the Tuscaloosa Fence Factory. The plaintiff objected to the introduction of this testimony, the court sustained the objection, and the defendant duly excepted.

Upon the hearing of all the evidence, the court, at the request of the plaintiff, gave the general affirmative charge in its behalf, and to the giving of this charge the defendant duly excepted. There was judgment for the plaintiff; and defendant appeals, and assigns as error the several rulings of the court to which exceptions were reserved.

HARGROVE & VANDEGRAAFF, for appellant.—The defendant was not estopped from denying the existence of the place designated in the note as the place of payment.—*Rudulph v. Brewer*, 96 Ala. 189; *Boit v. Corr*, 54 Ala. 112; *Parkinson v. Finch*, 45 Ind. 122; *Freeman's Bank v. Buckman*, 16 Gratton, 126; *Brown v. Hull*, 33 Gratton, 23; 1 Randolph on Com. Paper, § 128, notes 3 and 7; Daniel on Neg. Instr., § 90 and note. Oral proof that there was never any such place as the Tuscaloosa Fence Factory should have been allowed.—*Ramsey v. Young*, 69 Ala. 158; *Corbin v. Sistrunk*, 19 Ala. 206; *Litchfield v. Falconer*, 2 Ala. 280; 1 Brick. Dig. 862; 1 Greenl. Ev., §§ 284, 285; 2 Whart. Ev., § 1042.

There is no ground for the doctrine of equitable estoppel in this case.—*Steel v. Adams*, 21 Ala. 534; *Jewitt v. Miller*, 61 Amer. Dec. 753; Bishop on Contracts, § 294.

FRANK S. MOODY, *contra.*—1. Appellant is estopped

[Brown v. First National Bank of Tuscaloosa.]

by the recitals in the note from denying that there was such a place as the Tuscaloosa Fence Factory.—1 Daniel on Neg. Instr., § 859; *Hall v. Harris*, 16 Ind. 180; *Prickett v. Sibert*, 75 Ala. 315; *Person v. Thornton*, 86 Ala. 308; *Hill v. Nelms*, 86 Ala. 442; *Turner v. Flinn*, 72 Ala. 532; *Brooks v. Martin*, 43 Ala. 360; *Wilkinson v. Searcy*, 74 Ala. 243; *Auerbach v. Pritchett*, 58 Ala. 451; *Clements v. Loggins*, 2 Ala. 514; *Ruddell v. Dillman*, 73 Ind. 518; *Noble v. Moses Bros.*, 74 Ala. 604; 2 Daniel Neg. Instr., §§ 1351–2; *Hendricks v. Kelly*, 64 Ala. 388.

2. The question as to whether a note is negotiable must be determined by an examination of what appears on its face, and not by evidence gathered *aliunde*. This is the true rule.—*Schneider v. Schiffman*, 20 Mo. 571; 1 Dan. Neg. Instr., § 1, Par. 2.

3. The note was negotiable paper, and in the hands of a *bona fide* holder was protected against all defenses which might have been set up against the original payee.—Code of 1886, § 1756; *Cover v. Meyers*, 32 Amer. St. Rep. 394; *Wildsmith v. Tracy*, 80 Ala. 259; *Cap. City Ins. Co. v. Quinn*, 73 Ala. 558; *Reid v. Bank of Mobile*, 70 Ala. 199; *Connerly v. P. & M. Ins. Co.*, 66 Ala. 432; *Lehman v. Tallassee Mfg. Co.*, 64 Ala. 567; *Mayor v. Wetumpka Wharf Co.*, 63 Ala. 611; *Blackman v Lehman*, 63 Ala. 547. .

HARALSON, J.—The note sued on in this case reads as follows: "Tuscaloosa, Alabama, April 28, 1891. Six months after date, I promise to pay to the order of W. B. Pollett & Co., the sum of one hundred and twenty-five dollars, value received, with interest from the 28 day of April, 1891, and do hereby expressly waive all exemption rights under the constitution and laws of the State of Alabama. Payable at Tuscaloosa Fence Factory. J. Wick Brown."

The defenses set up were want and failure of consideration, fraud in procuring the execution of the note, and that at the time of its execution there was not, "and at no other time before or since it was executed, was there, nor has there been, such a place or factory, as the Tuscaloosa Fence Factory."

The replications to the pleas setting up these defenses— demurrers to which were overruled, and on which issue was joined—set up in substance, that the plaintiff, the

appellee here, purchased the note sued on, in the usual course of business, for a valuable consideration, in good faith, before maturity, and without notice of any defense to said note, or of any defect or informality therein; that the defendant executed the note sued on, and stated therein, that it was payable at the Tuscaloosa Fence Factory, and the defendant can not be heard to say, as against the plaintiff, that there is not now, nor was there, at the time said note was signed, nor since, such a place as the Tuscaloosa Fence Factory, and that defendant is estopped by the recitals in the exhibit to his pleas, from denying that there was or is such a place.

It is a principle of general recognition, that a purchaser of commercial paper in the usual course of business, before its maturity, for a valuable consideration, having no notice of defenses that existed between the original parties, or have subsequently arisen, is a *"bona fide* holder for value,"* and, as such, takes the instrument free from defenses which were available between the original parties.—Randolph on Com. Paper, § 14; 2 Daniel on Neg. Instr., 769 a. This court has held to this doctrine with an unwavering hand. We have gone to the extent of holding, that such a purchaser is under no legal obligation to inquire of the maker whether there was any defense or any defect in the note (*Wildsmith v. Tracy*, 80 Ala. 261); that in his hands, the instrument is discharged of all legal and equitable defenses to which it may have been subject before it came to him (*Capital City Ins. Co. v. Quinn*, 73 Ala. 560); that the holder of such paper, transferring it before dishonor, for value, to a *bona fide* purchaser, though he may have obtained it feloniously or fraudulently, can confer a title greater than he had, freed from all infirmity, and which will prevail over that of the true owner (*Blackman v. Lehman*, 63 Ala. 550); that when fraud or illegality in putting it in circulation is shown, if the purchaser prove that he acquired it in a manner to make him a *bona fide* holder for value, he will be protected (*Mayor v. Wetumpka Wharf Co.*, 63 Ala. 612).

Such paper is, as Mr. Daniel says, like the currency of the country, a circulating credit, and before maturity, the genuineness and solvency of the parties are alone to be considered in determining its value, and it has been fitly termed, "a courier without luggage."—1

Daniel on Neg. Instr., § 1. It has been elsewhere also well said, that negotiable paper carries on its face its own history, so that nothing can be alleged against it, while it continues in circulation undishonored, as against an innocent purchaser, other than what is there apparent. "The policy of the law, in reference to commercial paper, requires that it shall tell its own story, and have effect in the hands of innocent holders for value, according to what appears on it."—*Schneider v. Schiffman*, 20 Mo. 571.

Akin to the doctrine just asserted, is that other, which estops a party from denying that which he has declared in a note, bond or plea, to the detriment of another, who trusted the statement. It is not of importance, as has been said, whether the declaration or admission is made innocently or fraudulently, whether in point of fact it is true or false; it is the fact, that another has been induced to act on it, and must suffer injury, if its truth is gainsaid, that renders it conclusive.—*Prickett v. Sibert*, 75 Ala. 319 ; 1 Brick. Dig., 796, § 10. When one of two innocent persons must suffer from the tortious acts of a third, he must bear the loss who enabled the third party, or the aggressor, to cause it.—*Person v. Thornton*, 86 Ala. 308 ; *Hill v. Nelms, Ib.* 442 ; *Turner v. Flinn*, 72 Ala. 532; *Auerbach v. Pritchett*, 58 Ala. 451 ; *Brooks v. Martin*, 43 Ala. 360; 1 Dan'l on Neg. Instr., § 859.

It would seem from what has been said, that the demurrers to plaintiff's replications were rightly overruled, and that there was no error in giving the general charge for the plaintiff. The point is urged, however—the decision of which admits, or excludes the other defenses set up—that it was competent for the defendant to show by parol proof, that there was, in fact, no such place as the Tuscaloosa Fence Factory, the one referred to in the note as its place of payment.

The precise question has been twice before the Indiana court; the first time, in the case of *Hall v. Harris*, 16 Ind. 180, where it was held, that a note made payable "at the Piqua Branch Bank of Ohio," shows on its face that it was made in Ohio, and that the maker was estopped by his note to deny the existence, at its date, of the State Bank of Ohio. The second time, it arose in the case of *Parkinson v. Finch*, 45 Ind. 122, where the court say : "The real question for our decision is, whether a

person who signs a note purporting to be negotiable and payable in a bank of this State, is thereby estopped in an action brought by a *bona fide* purchaser for value and before maturity, from asserting and proving that there was no such bank as the one described in the note. It is provided by the 6th section of an act concerning promissory notes, bills of exchange," &c.   *       *     (appearing as section 5506 of the Code of that State) "that, notes payable to order or bearer in a bank in this State shall be negotiable as inland bills of exchange, and the payees and endorsers thereof may recover, as in case of such bills. We think it is obvious from the plain and unambiguous language of the statute, and from the numerous decisions of this court placing a construction upon the above section, that the common law privileges of negotiable notes are confined, in this State, to such notes as are drawn payable at or in a bank in this State, and that this presupposes that the bank in or at which the paper is payable, shall have an actual existence, at the time the note is executed." By section 5503 of the Code of that State, it is provided, in respect to negotiable instruments, that "whatever defense or set-offs the maker of any such instrument had, before notice of assignment, against an assignor, or against the original payee, he shall have also against the assignees."

In *Glidden v. Henry*, 104 Ind. 279, it is said : "The sole purpose of the section (5506) was to put a limitation upon section 5503, and provide for commercial paper that might circulate free from defenses, in favor of the maker. This is accomplished by the provision, that if the note be payable at a bank in this State, it shall be negotiable as an inland bill of exchange." It is obvious, then, without section 5506 of their Code, that what is generally termed, "*bona fide* holders for value," of such paper in that State, acquired no privileges against defenses which the maker had against the assignor or original payee thereof, and that, section 5506, protected such purchasers, against section 5503, when the instruments where payable *at a bank* in that State. If payable elsewhere, this privilege was not accorded

Our Code on the same subject provides (§ 1756), "Promissory notes payable in money at a bank or private banking-house, or a certain place of payment therein designated, and bills of exchange are governed by the commer-

cial law," and these are not subject to "payments, set-offs and discounts, had or possessed against the same, previous to notice of the assignment or transfer."—Code, §§ 1765, 2684.

The difference between the statutes in the two States, is striking.   There, paper to be available against secret defenses, in the hands of *bona fide* purchasers, must be payable at one class of places, of all the others—that of banks in the State; whereas, here to give it such protection, it may be made payable at any certain, designated place in the State, whether in the towns or cities or country, and these are without number.

If there were reasons for holding as the Indiana court did, that the existence of the bank could generally be ascertained, and if it can not be, the purchaser takes the paper at his peril—which doctrine we do not approve—they fail here, where there is no limit to the places at which such paper may be made payable.

We rest the case, however, on the broad principle that the acts of the maker and payees of the note vitalized and gave it credit, invited and induced the plaintiff to purchase it, and it is true conservatism and sound policy, promotive of right and equity, to seal their lips against contradiction and denial of that which they must be taken to have affirmed, to the injury of the plaintiff who trusted the affirmation.—*Bibb v. Hall*, 101 Ala. 109; *Snider v. Troy*, 91 Ala. 224; *Central A. M. Asso. v. Ala. G. L. Ins. Co.*, 70 Ala. 120; *Marion Savings Bank v. Dunkin*, 54 Ala. 471, and authorities above.

The evidence, without any conflict, established the truth of plaintiff's replications, and also an absence of any thing indicating to plaintiff that there was any irregularity or fraud in the transaction of the giving of the note, or that there were any defenses on the part of the maker to it.

We find no error in the record, and the judgment of the court below is affirmed.