MARY CAMBRELLENG et al., Respondents, *v.* EUPHEMIA C. PURTON et al., MORRIS LITTMAN, Purchaser, Appellant.

A purchaser at a judicial sale is entitled to a marketable title, that is, one free from reasonable doubt. He will not be compelled to take title where a doubtful question of fact relating to an outstanding right is not concluded by the judgment under which the sale was made.

If, however, the existence of the alleged fact, which is claimed or supposed to constitute a defect in or cloud upon the title, is a mere possibility, or the alleged outstanding right is but a very improbable or remote contingency, the court may, in the exercise of a sound discretion, compel the purchaser to complete his purchase.

Upon a motion by a purchaser to be relieved from his purchase at a partition sale, on the ground of a defect in the title, the following facts appeared: The premises were owned at the time of his death by C., who died intestate in 1878. All of his children who were known to be alive were made parties to the partition suit. In 1874 a son of the intestate, who was then twenty-nine years of age, and who had, up to that time, lived with his father at his home in New York city, disappeared and has never been seen or heard from since, although his family and friends made diligent inquiry for and efforts to find him. J. had been for years very intemperate, and was, at the time of his leaving home, seriously ill, suffering from various organic diseases brought on by his intemperate habits. He was social, had large acquaintances in the city, was attached to his family, and was kindly treated. He was not engaged in business, and was unable to support himself, and had always been supported by his father, who was a man of wealth. He left his home, without any reason whatever at a time when it was raining, just after hearing of the death of a lady to whom he was much attached, and had at one time been engaged. The family physician testified that the exposure was liable to produce death in a very short time, and he was of the opinion, and so informed the family when J. left, that, under the most favorable circumstances, he could not live a year. In 1882 letters of administration upon his estate were applied for, and upon proof of the circumstances, it was found that he died shortly after his disappearance, and letters were issued. The administrator performed his duties, and upon the decree of the surrogate, distributed the estate, and was discharged. Service of process by publication was made in this and in several other actions and proceedings, and in one, a partition suit, the court adjudged that J. died unmarried and intestate shortly after he left home. The objection made to the title was not that J. might be alive, but that he might have survived his father, and then died, leaving a widow or children, or a will. No one ever appeared claiming through him as widow, child, devisee or

legatee.  *Held,* that there was no reasonable doubt as to the title, and that the motion was properly denied.

(Argued January 26, 1891; decided February 24, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made December 29, 1890, which affirmed an order of Special Term denying a motion to relieve Morris Littman, a purchaser at the partition sale in the above-entitled action, from his purchase.

The facts, so far as material, are stated in the opinion.

*Henry W. Taft* for appellant.   The referee was unable to give a good marketable title to the premises.   (*Moore* v. *Williams,* 115 N. Y. 598; *Vought* v. *Williams,* 120 id. 253; *Shriver* v. *Shriver,* 86 id. 584; *Fleming* v. *Burnham,* 100 id. 9; *In re Trustees, etc.,* 31 id. 588; *McPherson* v. *Smith,* 49 Hun, 254; Fry on Spec. Perf. [2d ed.] §§ 573, 576, 579, 580, 583, 585; Pom. on Cont. §§ 198, 202, 203, 205; Waterman on Spec. Perf. §§ 411, 412, 415; *Dobbs* v. *Norcross,* 24 N. J. Eq. 327; *Swayne* v. *Lyon,* 67 Penn. 436; *Abbott* v. *James,* 111 N. Y. 677.)

*John Vincent* for respondents.   It is not necessary that any specific period should elapse to create the presumption of death, but it may arise whenever the facts of the case will warrant it. (*Stouvenal* v. *Stephens,* 2 Daly, 319.)   If the existence of an alleged fact is a possibility merely, or the alleged outstanding right a very improbable and remote contingency, the court may compel the purchaser to complete his purchase.   (*Terry* v. *Sampson,* 112 N. Y. 415.)   The common law has not been changed in this state, except by the statute under which a presumption of death is raised after seven years.   These provisions apply in terms only to life tenants.   At the time that the said partition suit was begun, the seven years had not elapsed. (Code Civ. Pro. § 841; 1 R. S. chap. 1, tit. 5, § 6.)   The judgment in this action determined the owners of the premises to be the parties to the action.   The purchaser cannot question that judgment.   (*Blakely* v. *Colder,* 15 N. Y. 617; *Howell* v.

*Mills,* 56 id. 226; 7 Lans. 183–195; *Cromwell* v. *Hull,* 97 N. Y. 209; *Reed* v. *Reed,* 107 id. 545; *Burhams* v. *Burhams,* 2 Barb. Ch. 398, 408, 409; *Jenkins* v. *Van Schaick,* 3 Paige, 242; *Jordan* v. *Van Epps,* 85 N. Y. 427.)

*William P. Quin* for respondent Purton. Whoever is interested in proving the exact time of a party's death must establish it. (*Eagle* v. *Emmet,* 4 Bradf. 121; 3 Abb. Pr. 221; *Seligman* v. *Sonneborn,* 1 How. Pr. [N. S.] 472.) The decisions of the surrogate and Supreme Court that John Colvill died intestate shortly after June, 1874, leaving no wife or descendant him surviving, were proper and fully justified by the facts. (*Sheldon* v. *Ferris,* 45 Barb. 128; *In re Nolting,* 43 Hun, 457; *Seligman* v. *Sonneborn,* 1 How. Pr. [N. S.] 471–477; *Stouvenal* v. *Stevens,* 2 Daly, 321–323; *King* v. *Paddock,* 18 Johns. 141; *Oppenheim* v. *Wolf,* 3 Sandf. Ch. 571; *Merritt* v. *Thompson,* 1 Hilt. 553; *Ferry* v. *Sampson,* 112 N. Y. 418.) The adjudications in the partition suits were properly made and bind all the parties thereto. (*Jenkins* v. *Fahey,* 73 N. Y. 359; 11 Hun, 353; *Jordan* v. *Van Epps,* 85 N. Y. 436; 19 Hun, 533; *Masten* v. *Olcott,* 101 N. Y. 157; Code Civ. Pro. §§ 1557, 1577; *Woodhull* v. *Little,* 102 N. Y. 166; *Reed* v. *Reed,* 107 id. 548.) No objection upon the ground of the unpaid taxes, assessments or mortgages mentioned in the affidavit of Newell Martin was raised at the Special Term. (Code Civ. Pro. § 1676.)

O'BRIEN, J. This was an action to partition certain real estate in the city of New York, and resulted in a judgment directing the sale of the same. The sale was conducted by a referee under the decree, and Morris Littman became the purchaser. He afterwards applied to the court to be relieved from his bid and to have refunded to him the ten per cent of the purchase-money, auctioneer's fees and expenses of searching the title which he had paid. This application was based upon an alleged defect in the title. The Special Term denied the application, and that order having been affirmed at General

Term, he appeals to this court.   The premises embraced in the
partition action, and which were sold to the appellant, were
owned by Alfred Colvill at the time of his death, December 6,
1878.   He died intestate, and the title passed to his children.
The children, who were known to be alive, were all made
parties to the action and named in the decree under which the
sale was made.   The only question that arises in regard to the
title relates to the interest of John Colvill, one of the chil-
dren, who disappeared from his father's house in New York
in June, 1874, and since then has not been seen or heard from,
and the order appealed from is based upon the conclusion that
he died without children, unmarried and intestate, and that
his interest in the real estate decended to his brother and
sister surviving, who were alive and parties to the decree.
The premises were purchased by the appellant for $24,700,
and are located on Madison avenue.   The purchaser, in his
application to be relieved, states that he is informed and
believes that the referee is not able to convey and deliver to
him a good and marketable title.   The only question involved
in this appeal is whether the facts presented to the court in
opposition to the application to be relieved from the purchase
were of such a character as to warrant the conclusion that the
title was good and marketable beyond all reasonable doubt.
John Colvill had resided with his father at 251 Fifth avenue in
the city of New York up to the time of his final disappearance
in June, 1874, and was then twenty-nine years of age.   From
the affidavits of his brother, sister and two or three other
relatives of the family and the family physician read in oppo-
sition to the application of the appellant, the following facts
appear :   From 1865 to 1870, he was very intemperate and had
spells of very hard drinking about every three months.   On
these occasions he disappeared from home and remained away
from a week to a month, and on his return he was generally
prostrated and in a very weak and nervous condition.   The
family physician discovered, from an examination in 1873,
that he was suffering from a number of organic diseases inci-
dent to indulgence in excessive drinking, such as chronic dis-

ease of the liver, congestion of the kidneys and valvular disease of the heart. In 1873, at the advice of the physician, he went to the Binghamton Inebriate Asylum and remained there for some time, but returned home against the advice of the physician and his family. On his return he indulged in frequent and prolonged debauches which lasted sometimes several weeks. In March, 1874, after one of these sprees, he had a severe illness marked by two violent hemorrhages of the stomach. It was discovered that his kidneys had become much worse, that there was extreme congestion of the liver and that the action of the heart was greatly disturbed. In May, 1874, he again disappeared, was gone about the usual time and returned apparently more prostrated than ever before. The physician, who attended him and who made the affidavit, thought he might die at any moment, and that if he went upon another spree death would be inevitable. The physician states that he had never known such severe hemorrhages of the stomach and was astonished that the man did not die from them. His legs were badly swollen and the action of the heart was labored and intermittent as the result of blood poisoning from the condition of the kidneys. The physician was of the opinion then and so informed the family that under the most favorable circumstances he could not live a year. He gave instructions that it would be unsafe for him to go out of his room and would not allow his sister to see him, and expressed the opinion then that if he got away again he would not come back alive. The physician warned Colvill that another attack would probably prove fatal, but he expressed a desire to die, as he could not control his passion for drinking. In June, 1874, while he was seriously ill, he was advised of the death of a lady to whom he had been attached and, it was reported, engaged. He was very much affected by this information and about two o'clock in the afternoon of that day he told his brother that he had some business to attend to down town and would return in a couple of hours. His brother saw him enter a Fifth avenue stage; he wore a one-buttoned gaiter and a shoe and left his valise packed in the house. It was raining and he

was subjected to an exposure, which from the testimony of the physician and others in the case, was liable to produce his death in a very short time. He has never been seen or heard of since this disappearance, though his family and friends have made diligent inquiry for and efforts to find him.

The father, it seems, left a considerable personal estate, in which John would, if alive, share with the other children. One of his sisters, in June, 1882, applied to the surrogate to be appointed administratrix of the estate upon the assumption that he was dead. The surrogate appointed a referee to take proof in regard to the death of John, and he reported the facts above stated and other facts, and found that he died shortly after his disappearance in June, 1874. The surrogate confirmed the report and appointed Mrs. Purton, one of the sisters, administratrix in January, 1883. She administered and distributed John's personal estate and was discharged. In an action to partition or sell the house on Fifth avenue, brought by one of the heirs, the summons was published as against John, the property was sold for $100,000, and after the sale the question arose as to the distribution of the proceeds. The court in that action found that John was dead and directed that his brother and sister, parties to this action, were entitled to the proceeds of the sale. There is no dispute as to these facts, but the purchaser nevertheless claims that John Colvill may have survived his father, from whom the title to the property descended, and then died, leaving a widow or children surviving or a last will. No objection is made, as we understand, to the title on the ground that John may be alive. It is assumed that this position would be sufficiently answered by the fact that service of the summons by publication was made upon him in the action. It is well settled that a purchaser at a judicial sale is entitled to a marketable title, and that has been defined to be a title free from reasonable doubt. A purchaser will not be compelled to take title where a doubtful question of fact relating to an outstanding right is not concluded by the judgment under which the sale was made. (*Fleming* v. *Burnham,* 100 N. Y. 1.)

But this rule will not operate in every case to bar the enforcement of the sale. If the existence of the alleged fact which is claimed or supposed to constitute a defect in or cloud upon the title is a mere possibility or the alleged outstanding right is but a very improbable or remote contingency, which, according to ordinary experience, has no probable basis, the court may in the exercise of a sound discretion, compel the purchaser to complete his purchase. It has been well said that this discretionary power is to be carefully and guardedly exercised and applied only in cases free from all reasonable doubt. (*Ferry* v. *Sampson*, 112 N. Y. 415 ; *Moore* v. *Williams*, 115 id. 586 ; *Mutual Life Ins. Co.* v. *Woods*, 121 id. 302.)

But we think, from the undisputed evidence in this case, that the fact claimed to constitute the only defect in the title is such a very remote and improbable contingency and is such a slender possibility only, that it is a proper case for the application of the principle and that the courts below were right in refusing to relieve the purchaser from the obligation to perform his contract. The fact that John Colvill disappeared seventeen years ago and has not since been seen or heard from, would not alone be sufficient to obviate the objections to the title. But he disappeared in such a condition of health and mind, induced by a long course of dissipation, and under such circumstances, that his death in a very short time is the inevitable conclusion. It is scarcely possible that he could have survived his father, who lived more than four years after his disappearance When in health he was social, had a large acquaintance in the city, was attached to his family and kindly treated at his father's house. He had never been engaged in business and could not support himself, as he had always been supported by his father, and he left his home without any means whatever. He was then owner of an undivided one-fourth interest in the house on Fifth avenue which descended to him from his mother, who died in 1852, subject to his father's tenancy by the courtesy, which interest was worth at least $20,000, and prospectively he was entitled to share in a con-

siderable personal estate which his father had, who had then retired from business on account of impaired health and advanced age.    Besides publication of process was made in at least three actions or proceedings, his sister took letters of administration upon his estate after adjudication by the Surrogate's Court that he was dead, and his personal estate has been administered and distributed.    In another action for partition of real estate owned by his mother, process was published and after sale and upon distribution of the proceeds the court adjudged that he died unmarried and intestate shortly after June, 1874, leaving his brother and sister his only heirs at law and next of kin.    The conduct of these suits and proceedings required numerous publications of process and notice, but no one has ever appeared claiming through him as widow, child, devisee or legatee.    Under these circumstances the outstanding right upon which the purchaser rests his refusal to perform has no probable basis and cannot be said to constitute any real defect in the title.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.