## BAUT v. DONLY.

[No. 20,019. Filed May 26, 1903.]

BILLS AND NOTES.—*Agreement to Use for Special Purpose.*—*Breach of Agreement.*—*Principal and Surety.*—Where defendant executed as surety two promissory notes under an agreement with the principal and payee thereof that the notes should be given in payment of certain articles purchased of payee, and such notes were applied to a different purpose, without the knowledge of the surety, the surety waived his right of defense thereto by executing new notes in renewal of the old ones with a knowledge that the old notes had not been used for the purpose for which they were executed. *pp. 671-677.*

APPEAL AND ERROR.—*Record.*—*Bill of Exceptions.*—*Instructions.*—A bill of exceptions purporting to embrace the instructions can not be regarded as a part of the record where it is not shown that it was ever filed with the clerk or in court after it was signed by the judge. *p. 677.*

SAME.— *Record.*— *Original Bill of Exceptions.*— *Instructions.*— Instructions embodied in an original bill of exceptions embracing the evi-

dence which is certified upon appeal without copying can not be considered as a legitimate part of such bill. *pp. 677, 678.*

From Laporte Superior Court; *H. B. Tuthill*, Judge.

Action by William H. Donly against John Baut and another on promissory notes. From a judgment for plaintiff, defendant John Baut appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*C. R. Collins, J. R. Collins* and *M. T. Krueger*, for appellant.

*J. F. Gallaher*, for appellee.

JORDAN, J.—Action by appellee on two promissory notes, bearing date December 1, 1897, executed by Martin and John Baut, each for $175, payable to appellee at the First National Bank of Michigan City, Indiana. Upon the issues joined there was a trial by jury, and a verdict returned awarding to appellee the full amount due upon both of the notes, and the jury also returned answers to a series of interrogatories. Appellant John Baut unsuccessfully moved for a new trial and judgment was rendered against him and his codefendant Martin Baut on the verdict of the jury. Appellant John Baut alone appears, Martin Baut having declined to join.

The only error assigned is overruling the motion for a new trial. Appellant filed a separate answer to the complaint, whereby he admitted the execution of the notes, but alleged that he executed each of them as surety for his codefendant Martin Baut, of which fact it is averred appellee had notice at the time the notes were executed. Appellant further alleged in his answer that his said codefendant, on or about September 2, 1897, entered into negotiations with one Fred C. Adams for the purchase of 100 patented dressmaking guides, together with the exclusive privilege of selling said guides in Macomb county, in the state of Michigan; that in consideration of said purchase, appellant and Martin Baut executed two promissory notes on September 2,

1897, payable to said Adams in the sum of $175 each, at the First National Bank of Michigan City, Indiana. Appellant alleges that after executing these two notes he placed them in the hands of Martin Baut, to be delivered by him to Fred C. Adams, upon the latter complying with the aforesaid agreement, of all of which facts it is averred appellee had notice. The answer then charges that Adams did not comply with the terms of his said agreement, by failing to sell to said Martin Baut the said dressmaking guides, together with the privilege of selling the same in the territory mentioned in the state of Michigan; that Martin Baut on his part also failed to comply with the agreement, by failing to purchase of Adams the guides in question with the aforesaid privilege. It is further averred that after the execution of the notes Martin Baut and Fred C. Adams transferred them to appellee, in consideration of the sale by the latter to Martin Baut of an interest in a certain school wherein the art of dressmaking was taught, of which transaction and sale appellant had no knowledge until after the transfer of the notes to appellee; that when said notes became due appellee procured appellant and Martin Baut to renew them; that when appellant renewed said notes he had no knowledge that they had been diverted from the purpose for which they were intended to be used at the time of their execution, and he renewed them under the belief that they had been used as originally contemplated. It is further alleged that the notes in suit are the ones which under the circumstances appellant renewed, and it is charged that appellee, at and previous to the time that the original ones were transferred to him, knew that they had been executed for the purpose of purchasing from said Adams the guides and territory as heretofore stated, and that they had been executed on the part of appellant for that purpose, and for no other. Upon the facts alleged appellant prayed judgment in his favor. A demurrer to this answer was overruled.

The errors argued by counsel for appellant relate (1) to the giving and refusing to give certain instructions to the jury; (2) that the evidence does not sustain the verdict of the jury.

As is usually the case, there is a sharp conflict in the evidence upon some of the material or issuable facts in the case. Nevertheless there is evidence going to establish or prove that Martin Baut, who is the son of appellant John Baut, negotiated with one Fred C. Adams for the purchase of 100 patented dressmaking guides, with the right or privilege of selling the same in Macomb county, in the state of Michigan. The purchase price was to be $350. Two promissory notes of date September 2, 1897, each for $175, payable to Fred C. Adams at the First National Bank of Michigan City, Indiana, were executed by Martin Baut, as principal, by his father John Baut, appellant herein, as surety. One of these notes was to become due in three months after the date thereof, and the other was to be due in five months. It appears that Martin Baut and Fred C. Adams went to Michigan City and procured appellant to sign said notes for his son Martin. Appellee was not present when the notes were executed. After their execution Martin Baut, with the consent of appellant, took possession of them, and was, as it appears, to turn them over to Adams in payment of his purchase from the latter of the guides and territory in controversy. It seems, however, that Martin Baut and Adams, after the execution of the notes, failed to consummate the sale and purchase in question as intended, for the reason that Martin Baut concluded that instead of making said purchase, as had been agreed upon between himself and Adams prior to the execution of the notes, he would purchase a one-half interest in an institution owned and conducted by appellee in the city of Elkhart, Indiana; said institution being a school wherein the art of dressmaking was taught to the pupils thereof. In respect to the

question as to whether Martin Baut was solicited by appellee to purchase an interest in the school, the evidence is conflicting; appellee testifying that Martin first came to him and suggested making the purchase of an interest in the school, and that he in no manner solicited or induced him to purchase such interest.   There is evidence to establish that Martin Baut offered to turn over to appellee, in consideration of the sale to him of a one-half interest in the school, the two notes, heretofore mentioned, executed by him and his father.   Appellee agreed to accept these notes, if Adams, the payee thereof, would indorse them.   The latter accordingly indorsed them, and Martin Baut thereafter delivered them to appellee, in consideration of the sale to him of a one-half interest in the school.   At the time appellee accepted and received the notes in consideration of said sale to Martin Baut, the jury find, and there is evidence to sustain the finding, that appellee had no knowledge that appellant had signed the notes for the purpose of enabling Martin Baut to purchase the guides and the right to sell them in Macomb county, in the state of Michigan. After the maturity of the note which became due in three months, appellee demanded payment thereof from appellant.   The latter claimed that he was not at the time prepared to pay the note, and requested that appellee extend the time of the payment of the two notes for one year. This, appellee, it appears, refused to do, but finally agreed and consented that if appellant and his son Martin Baut would execute new notes to him, he would make one of these new notes payable in four months after December 1, 1897, and the other due and payable in seven months after said date.   To this proposition appellant, as it seems, agreed, and the notes in suit were thereupon executed by him and Martin Baut.   Adams, the indorser of the old notes, was not a party in any manner to the latter transaction.   After the execution of the notes in suit the old ones were surrendered and turned over by appellee to appellant

and Martin Baut for cancelation. The jury find, and there is evidence to warrant the finding, that at the time appellant executed the new notés he knew that the old ones had not been used by Martin Baut in the purchase from Adams of the dressmaking guides as originally intended. Counsel for appellant apparently confine their argument to the alleged diversion of the original notes, by reason of their being transferred to appellee in consideration of the sale of the one-half interest in the school in controversy, instead of being used by Martin Baut in the purchase of the dressmaking guides.

The real question presented under the facts is whether appellee is entitled to recover upon the notes in suit, regardless of any defense which may have existed in favor of appellant against a recovery on the original or old notes in the hands of appellee. The old notes, as shown, were negotiable paper, and were indorsed by Adams before their maturity; and appellee upon the trial claimed that he received and accepted them in the due course of business, giving full value therefor, without notice of any defense thereto, and he insists that under the facts he is shown to have been a *bona fide* purchaser of the old notes. But, passing that question,—as we may, for the reason that upon another view of the case appellant's defense, which he seeks to make, is not sustained by the evidence,—the evidence, as previously stated, discloses that after the maturity of one of the old notes, which was due in three months, appellee called upon appellant for the payment thereof. The latter claimed that he was not then prepared to meet or pay the note, and requested appellee to extend the time of payment of both the notes. It appears that he and appellee finally agreed upon an extension of the time for the payment of the money evidenced by the two old notes, on the condition that appellant and his son should execute new notes. In pursuance of this agreement the notes in suit were executed by appellant and his son, Martin Baut, to

appellee, one of them being made payable four months after December 1, 1897, and the other was to be due and payable in seven months after that date. Upon the execution of the new notes, appellee surrendered the old ones which he held to appellant and Martin Baut for cancelation. At the time appellant executed the notes in suit, the jury find, and there is evidence to sustain the finding, that he knew that the old notes then held by appellee had not been used for the purpose for which they were intended to be used by Martin Baut at the time they were executed.

Conceding, *arguendo,* that had appellee, before the execution of the new notes, instituted an action to recover upon the old ones, appellant might have defended against a recovery thereon upon the ground of their alleged diversion from the use for which they were originally intended, nevertheless, under the evidence and the facts in this case, he is not now in a position to interpose such a defense against a recovery on the notes in suit. These notes, under the circumstances, are to all intents and purposes new contracts, by which appellant placed himself under new obligations to appellee. By means of the new notes the time for paying one-half of the aggregate principal of the old notes was thereby extended four months, and payment of the other half was extended two months. Appellant, with knowledge of the diversion of the old notes, seems to have requested and obtained an extension of time, of which he availed himself, and agreed under the new obligation to pay to appellee the money at the time or times as therein provided. Upon the execution of the new notes it is shown that appellee surrendered up the old ones to appellant and his son for cancelation. Certainly, then, under the facts and circumstances, appellant, by executing the notes in suit, must be regarded and held as having waived and deprived himself of any right of defense existing in his favor against appellee, growing out of or connected with the old or original notes. *Jaqua* v. *Montgomery,* 33 Ind. 36, 5 Am. Rep. 168;

*Doherty* v. *Bell*, 55 Ind. 205 ; *St. John* v. *Hendrickson*, 81 Ind. 350. It follows, and we so conclude, that the evidence sustains the verdict of the jury.

The instructions given and refused by the court are not in the record. Hence we are not in a position to consider any of the questions which appellant seeks to present in regard to the giving or refusing to give instructions to the jury. In the transcript, after the close of the certificate signed by the trial judge to the bill of exceptions, embracing the original longhand manuscript of the evidence, appears a document, purporting to be a bill of exceptions, containing the instructions given and refused. This bill is signed by the judge, but there is nothing whatever to show that it was ever filed, either in court or with the clerk, after it had been signed. That this is a fatal omission is settled by many decisions of this court. Therefore it follows that the bill in question, purporting to embrace the instructions in question, can not be regarded as a part of the record in this appeal. *Peerless Stone Co.* v. *Wray,* 143 Ind. 574, and cases cited.

Counsel for appellant seemingly consider that the instructions in dispute are a part of the original bill of exceptions, containing the longhand manuscript of the evidence, which bill has been certified to this court without being transcribed. In their brief counsel say : "The bill of exceptions contains all of the evidence given in the cause, and said bill of exceptions contains all of the instructions given by the court to the jury." If this assertion were true, in respect to the instructions being a part of the bill containing the original longhand manuscript of the evidence, nevertheless, under such circumstances, the instructions would not properly be a part of the record; for it is settled beyond controversy that instructions embodied in an original bill of exceptions, embracing the evidence which is certified upon appeal without copying, can not be legitimately regarded or considered as a part of such bill. *Carlson* v. *State,*

145 Ind. 650; *Leach* v. *Mattix*, 149 Ind. 146; *Adams* v. *State*, 156 Ind. 596-604; *Prudential Ins. Co.* v. *Sullivan*, 27 Ind. App. 30.

No available error being presented in this appeal, the judgment of the lower court is affirmed.