KENEFICK ET AL. *v*. SCHUMAKER ET AL.

[No. 9,283.    Filed May 29, 1917.]

1. VENDOR AND PURCHASER.—*Contract of Sale.—Breach.—Damages.—Right to Recover.*—In an action for the breach of a contract for the sale of real estate, where performance by the vendors, nonperformance by the purchasers and substantial damages are shown to have been suffered by the vendors, the vendors are entitled to recover against the purchasers.  p. 558.

2. CONTRACTS.—*Pleading.—Averment of Performance.*—The rule that where a party seeks to recover damages for the breach of a contract, he must allege and prove compliance on his part, or facts showing a proper excuse for not having done so, does not apply when the condition not performed has been waived by the opposite party.   p. 558.

3. VENDOR AND PURCHASER.—*Delivery of Possession.—Delay.—Waiver.*—Where a contract of sale of a dwelling house and a saloon provided that possession was to be delivered to the buyers on February 1, and possession of the saloon was delivered prior to that date, but the purchasers were not placed in possession of the dwelling house until February 20, and they retained possession of the premises for two months, during which time they continued negotiations for the purchase of the realty, they waived the breach of the contract occasioned by the delay in obtaining possession, and could not urge it as a defense to the vendor's action for breach of the contract.  pp. 559, 560.

4. VENDOR AND PURCHASER.—*Waiver.*—Where one in possession of any right, whether conferred by law or by contract, and with full knowledge of material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it, such right is waived.  p. 559.

5. VENDOR AND PURCHASER.—*Delayed Delivery of Possession.—Waiver.*—Where purchasers of real estate, possession of which was to be given on a specified date, refused to complete their purchase, and when vacating the premises notified the vendors that they would not carry out the contract because the abstract did not show a clear title, they waived any delay on the part of the vendors in delivering possession, since a party refusing to comply with a contract cannot base his refusal to perform on one ground and defend an action for a breach of the contract on another and different ground.   p. 561.

6. VENDOR AND PURCHASER.—*Contract.—Performance.—Furnishing Abstract of Title.*—Where a contract for the sale of realty required the vendors to furnish an abstract of title, and an ab-

stract duly certified by a competent abstracter was seasonably tendered to the buyers and, upon objection being made that it did not contain a statement as to certain taxes and special assessments and as to a certain judgment record, such objections were properly met by a search of the records and the abstract, containing a certification as to the facts disclosed by such records, was returned within two days, there was a compliance with the contract, provided the abstract showed such title as was required. p. 562.

7. VENDOR AND PURCHASER. — Vendor's Title. — Sufficiency. — Where a contract for the sale of realty merely required that the abstract to be furnished should show title in the vendors, an abstract showing a marketable title in them was the most the buyers could demand. p. 563.

8. VENDOR AND PURCHASER.—Marketable Title.—What Constitutes.—A marketable title is one free from reasonable doubt, and such that a reasonably prudent person, with full knowledge of the facts and their legal bearings would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. p. 563.

9. VENDOR AND PURCHASER.—Marketable Title.—What Constitutes.—A marketable title is one so free from defects as to enable the holder, not only to retain the land, but to possess it in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value. p. 563.

10. VENDOR AND PURCHASER.—Marketable Title.—What Constitutes.—A mere suspicion against a title, or a speculative possibility that a defect in it might appear in the future, does not render the title unmarketable. p. 563.

11. VENDOR AND PURCHASER.—Marketable Title.—What Constitutes.—Defects.—Where the court found that there were some defects in a title, but that they "were not of a serious nature and did not affect the possessory title" of the vendors, the title was marketable. p. 565.

From Laporte Circuit Court; James F. Gallaher, Judge.

Action by William H. Kenefick and others against Frederick J. Schumaker and another. From the judgment rendered, the plaintiffs appeal. Reversed.

Martin R. Sutherland and Ralph N. Smith, for appellants.

Worth W. Pepple, for appellees.

BATMAN, J.—This is an action by appellants against appellees to recover liquidated damages for the breach of a contract for the sale of real estate. The complaint is in a single paragraph, demanding a judgment for $1,000 for breach of such contract, which was answered by a general denial. Appellees filed a counterclaim, demanding a judgment for $3,000 for a breach of the same contract, which was answered by general denial. Trial was had by the court. A special finding of facts was made, and conclusions of law were stated thereon that neither the appellants nor appellees were entitled to recover and that each party should pay their own costs. Appellants duly excepted to the first conclusion of law—that they were not entitled to recover on their complaint. Judgment was rendered in accordance with the conclusions of law. Appellants filed their motion for a new trial on the single ground that the decision of the court is contrary to law. This motion was overruled and exceptions reserved by appellants. Appellants assigned several errors, but have waived all except the fourth and fifth, relating to the action of the court in stating its conclusion of law No. 1 and in overruling their motion for a new trial.

The following is a substantial statement of so much of the special finding of facts as is deemed necessary for the determination of the questions presented on appeal: That on January 14, 1914, appellants William H. Kenefick and Mary Kenefick were the owners of certain real estate in Michigan City, Indiana, on which there were two buildings—one occupied as a dwelling house and the other as a saloon; that on said date they entered into a written contract with appellees for the sale of said real estate to them; that said contract provided, among other things, that said appellants should convey said real estate to appellees, by a good and suf-

ficient warranty deed, on or before February 15, 1914, on payments being made as therein provided; that the said appellants should furnish appellees, on or before February 1, 1914, a complete abstract of title to the premises, brought down to date, certified to by a competent abstracter, showing the title to said premises in appellants, and allow appellees a reasonable opportunity to have the same examined; that possession of said premises was to be given appellees on or before February 1, 1914; that the purchase price was to be $6,000 to be paid as follows: $200 in cash on the execution of such contract, $1,800 on February 15, 1914, and the balance by note, secured by mortgage on said real estate, on receipt of deed by appellees; that time should be of the essence of such contract; and that either party failing to comply with the provisions thereof should forfeit and pay the other party the sum of $1,000, which sum was fixed and agreed upon as liquidated damages for such default; that for the same consideration appellant, James P. Kenefick, who also joined in said contract, agreed to sell and transfer to appellees a certain liquor license, and the furniture and fixtures in such saloon building; that appellants delivered the possession of said saloon building to appellees on January 17, 1914, who entered into possession of the same and operated the business therein until April 15, 1914; that at the time of the execution of the contract a tenant of appellants occupied said dwelling, and by reason of such fact appellants were unable to tender possession thereof to appellees until February 20, 1914, on which date appellees took possession thereof and continued to occupy the same until April 15, 1914; that prior to said date appellees had no possession of the dwelling house, except that they were permitted to use a telephone therein; that on January 26, 1914, appellants tendered

to appellees an abstract of title to the premises, duly certified by a competent abstracter of Laporte county, Indiana, showing title in appellants William H. and Mary Kenefick, the certificate to the abstract being dated January 24, 1914; that at the time of the tender of the abstract appellees refused to accept it or to take it to have it examined, but by their directions left it with appellants; that appellants thereafter repeatedly tendered the abstract to appellees until April 8, 1914, but they did not accept it, nor take it until the last-named date; that on the 5th, 11th and 15th days of February, 1914, appellants tendered appellees a warranty deed for the premises and the abstract of title and demanded that they complete the purchase in accordance with the terms of the contract; that appellees refused to accept the deed or abstract and to complete the purchase, but stated they would do so later and requested appellants to hold the same until a later date; that on said April 8, 1914, appellants again tendered the abstract and the deed to appellees, and requested that they accept them and pay the balance of the purchase price; that thereupon by their directions, the abstract was sent to a certain Mr. Sallwasser, whom they designated as their attorney, for examination; that thereafter, on April 10, 1914, their said attorney notified appellants that the abstract did not contain any certification as to taxes and special assessments of the corporation of Michigan City, Indiana, or as to the condition of the judgment record of the superior court at said city; that appellants thereupon caused search to be made of the records by said abstracter and a certificate thereof to be attached to said abstract, and then delivered the same to appellants' said attorney on April 13, 1914; that there were some defects in the title as shown by said abstract, which were not of a serious nature and did not affect the possessory title of ap-

pellants; that arrangements were made by appellants and appellees to meet at the office of appellee's attorney on April 14, 1914, and complete such sale and purchase, but appellees did not keep the engagement, nor complete said purchase under the contract, on said date or any day thereafter; that appellants, on April 15, 1914, served a written notice on appellees demanding that they complete the said purchase of the premises, tendered them a deed therefor, demanded payment of the balance of the purchase price, and notified them that unless they completed the purchase by April 20, 1914, they would sue on the contract; that appellees did not complete the purchase, nor offer to do so, but vacated the premises on April 15, 1914, refused to carry out the contract or to complete the purchase, and notified appellants that they would not do so on account of the condition of the abstract, in that it did not show a clear title; that appellees have paid $200 of the purchase price, but the remainder thereof has not been tendered or paid; that appellees took possession of the saloon furniture and fixtures, on January 17, 1914, and on said date appellee Frederick J. Schumaker took possession of all the liquors in the saloon, which appellants gave to the appellee free of cost; that appellant James P. Kenefick complied with the terms of the contract on his part to be performed; that appellants did not derive any revenue from the buildings on the premises for six months from the time of making the contract; that the reasonable rental value of the premises is $40 per month; that appellant James P. Kenefick sold the liquor license mentioned in the contract in June, 1914, for $750; that the fair cash market value of the premises without the liquor license on April 15, 1914, when appellees vacated, was $4,000.

Appellants contend, in effect, that the facts found by the court show the existence of the contract sued on,

performance on their part, nonperformance on
1.  the part of appellees, and that by reason thereof
they have suffered substantial damages.    Such
facts, if found, would entitle appellants to recover.
*Roder* v. *Niles* (1916), 61 Ind. App. 4, 111 N. E. 340.
Appellees, on the other hand, hold to the contrary, and
urge two propositions in support of their contention.
First, that appellants, having alleged full performance
of the contract in suit on their part, cannot recover on
proof of a waiver; and, secondly, that the special find-
ings show a failure on the part of appellants to com-
ply with the contract in regard to the possession of the
premises and the furnishing of an abstract of title
thereto.

Appellees, in support of their first proposition, seek
to invoke the well-established rule that, where a party
seeks to recover damages for the breach of a con-
2.  tract, he must allege and prove a compliance
with the contract on his part, or facts showing
a proper excuse for not having done so.    *Collins* v.
*Amiss* (1902), 159 Ind. 593, 65 N. E. 906; *Korbly* v.
*Loomis* (1909), 172 Ind. 352, 88 N. E. 698, 139 Am. St.
379, 19 Ann. Cas. 904; *McFarlan Carriage Co.* v. *Con-
nersville Wagon Co.* (1911), 49 Ind. App. 318, 96 N.
E. 400.    This rule, however, does not apply in a case
where the condition not performed has been waived by
the opposite party.    It has been, in effect, so held in the
recent case of *Union Fraternal League* v. *Sweeney*
(1915), 184 Ind. 378, 111 N. E. 305, decided by the
Supreme Court.    In that case the court, in determin-
ing this identical question, said on page 381:    "The
question here presented has been considered by various
courts, and while the holdings are not entirely harmoni-
ous, we believe the greater weight of authority sup-
ports the proposition that under a declaration of per-
formance proof of waiver by defendant is competent

and will be deemed as the equivalent of proof of performance." Appellees' first contention, therefore, cannot prevail.

We shall now consider whether there was a breach of the contract on the part of appellants and a waiver thereof on the part of appellees. The parties 3. seem to have treated the provision in the contract for the possession of the premises to mean actual possession, and the court evidently adopted such construction in its findings. Under this construction appellees claim that there was a breach of the contract in suit on the part of appellants by their failure to deliver to them actual possession of the dwelling house on the real estate in question, on February 1, 1914, as provided in the contract. Appellants admit such failure, but claim that the possession was delivered to appellees on February 20, 1914; that appellees accepted the possession on said date, and retained possession thereof until April 15, 1914; that on said date they vacated the premises and refused to complete the purchase on the sole ground that the abstract furnished by appellants did not show a clear title; and that by reason of this fact appellees waived any breach of the contract on their part on account of the delay in giving possession of the dwelling house as provided in the contract. The special finding of facts shows the breach claimed by appellees and also the waiver claimed by appellants. An approved definition of waiver reads as follows:

" 'Waiver is where one in possession of any 4. right, whether conferred by law or by contract, and with full knowledge of material facts, does or forbears the doing of something inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it

afterwards.'" *Shedd* v. *American Credit, etc.,*
3. *Co.* (1911), 48 Ind. App. 23, 95 N. E. 316; *Ohio*
*Valley Buggy Co.* v. *Anderson Forging Co.*
(1907), 168 Ind. 593, 81 N. E. 574, 11 Ann. Cas. 1045.
In accord with this rule it is held that performance
within the time specified by a contract may be waived
by the conduct of the other party; as by acts recogniz-
ing the contract as subsisting, by receiving payments,
or by continuing negotiations. 36 Cyc 717; *Emmons*
v. *Kiger* (1864), 23 Ind. 483; *Templer* v. *Muncie Lodge,*
*etc.* (1911), 50 Ind. App. 324, 97 N. E. 546; *Merrell* v.
*Garver* (1913), 54 Ind. App. 514, 101 N. E. 152; 2
Black, Rescission and Cancellation §§594-610; *Davis* v.
*Robert* (1889), 89 Ala. 402, 8 South. 114, 18 Am. St.
126. The rule is not only applicable to rights acquired
by mere delay, but also to those based on the more griev-
ous wrong of fraud. 9 Cyc 436; *LeVine* v. *Whitehouse*
(1910), 37 Utah 260, 109 Pac. 2, 24 Ann. Cas. 407; *Gal-*
*lagher* v. *O'Neill* (1907), 78 Neb. 671, 111 N. W. 582;
*Stephenson* v. *Allison* (1898), 123 Ala. 439, 26 South.
290; *McCourt* v. *Johns* (1898), 33 Ore. 561, 53 Pac.
601; *St. John* v. *Hendrickson* (1882), 81 Ind. 350; *Tark-*
*ington* v. *Purvis* (1891), 128 Ind. 182, 25 N. E. 879, 6
L. R. A. 607; *Baut* v. *Donly* (1903), 160 Ind. 670, 67 N.
E. 503.

The special findings show that possession of all of
the premises was to be delivered to appellees on Febru-
ary 1, 1914; that appellants delivered to appellees the
possession of the saloon building on January 17, 1914;
that appellees took possession thereof on said date and
operated the business therein until April 15, 1914; that
appellees were not placed in possession of the dwelling
house on the premises until February 20, 1914, and had
no use thereof until said date, except they were per-
mitted to use a telephone therein; that appellees took
possession of the dwelling house on February 20, 1914,

and continued to occupy it until April 15, 1914; that during this time appellees treated the property as their own, and continued negotiations with appellants with reference to the purchase of the real estate under the contract, thereby recognizing it to be valid and subsisting, notwithstanding the breach thereof by appellants in failing to deliver possession of the dwelling house on February 1, 1914, as provided in the contract. The special findings are silent as to any objections on the part of appellees as to the delay in obtaining possession of the dwelling house. Under these facts it clearly appears that appellees waived the breach of the contract occasioned by the delay in obtaining possession and cannot urge it as a defense to this action. But this is not the only fact supporting the waiver,

5. as shown by the special finding of facts. It is found that at the time appellees refused to complete the purchase and vacated the real estate in question, they notified appellants, "that they would not carry out the contract on account of the condition of the abstract, in that it did not show a clear title." It is well established that a party to a contract, in refusing to comply with its terms, cannot base his refusal on one ground and, when an action is brought for its breach, defend on another and different ground. *Aetna Ins. Co.* v. *Shryer* (1882), 85 Ind. 362; *Nat. Live Stock Ins. Co.* v. *Elliott* (1915), 60 Ind. App. 112, 108 N. E. 784; *Union Fraternal League* v. *Sweeney, supra; List & Son Co.* v. *Chase* (1909), 80 Ohio St. 42, 88 N. E. 120, Ann. Cas. 61, and note. It is clear that appellees, having based their refusal to complete their purchase of the real estate, on the condition of the title, as shown by the abstract, waived their defense on any other ground; and hence cannot defend on a failure to deliver possession on the day named in the contract.

VOL. 64—36

We now direct our attention to the remaining contention urged by appellees in support of the finding and judgment of the court below, viz.—that appellants did not comply with their part of the contract with reference to furnishing an abstract of title to the real estate in question. We have hereinbefore set out the facts found by the court in this regard, whereby it is disclosed that an abstract of the title, duly certified by a competent abstracter, was seasonably tendered to appellees; that there was long delay on the part of appellees in taking the abstract for examination; that when it was so taken it was returned in two days with the objections that the abstract did not contain a statement as to certain taxes and special assessments and as to a certain judgment record; that such objections were promptly met by proper search of the records in question, and a certification as to such facts, and that within two days thereafter, the abstract was again delivered to appellees. It is not found that any further specific objections were made to the abstract, but such special finding shows that appellants and appellees agreed to meet at the office of appellee's attorney on April 14, 1914, and complete the sale and purchase of the real estate, but appellees did not keep the engagement, but on April 15, 1914, vacated the real estate, and notified appellants that they would not carry out the contract on account of the condition of the abstract, in that it did not show a clear title. It thus appears that appellants complied with the contract in the matter of furnishing the abstract, provided it showed such a title as was specified therein. The contract called for a complete abstract showing title in appellants. The court finds that there were some defects in the title as shown by the abstract which were not of a serious nature, and did not affect the possessory title of appellants. This language is not entirely

clear, but we construe it to mean that there were no serious defects in the title, and none which would affect the possessory title of appellants, and shall so consider it in determining whether the findings show a title that met the requirements of the contract.

The specification in the contract as to the kind of title to be shown by the abstract is not very exacting. It only requires that it should show a title in appellants. The most for which appellees could contend under a liberal construction of this provision in their favor is that such abstract should show a marketable title. Assuming, then, that such is the requirement of the contract, does the finding of the court show that the abstract furnished met this requirement? The term "marketable title," as applied to real property, has been repeatedly defined by text-writers and courts, and while the definitions have not been uniform, the term has a well-defined and well-understood meaning. The following are some of the essentials that enter into all the definitions and serve to disclose the generally accepted meaning of such term: Such a title must be free from reasonable doubt, and such that a reasonably prudent person, with full knowledge of the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. It must be so far free from defects as to enable the holder, not only to retain the land, but possess it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value. But a mere suspicion against the title, or a speculative possibility that a defect in it might appear in the future, cannot be said to render a title unmarketable. It is not required to be

free from mere shadows or possibilities, but from probabilities. Moral, not mathematical, certainty that the title is good is all that is required. *Kling* v. *Realty Co.* (1912), 166 Mo. App. 190, 148 S. W. 203; *Todd* v. *Union Dime Sav. Institution* (1891), 128 N. Y. 636, 28 N. E. 504; *Moot* v. *Business Men's, etc., Ass'n* (1898), 157 N. Y. 201, 52 N. E. 1, 45 L. R. A. 666; *Hubachek* v. *Maxbass, etc., Bank* (1912), 117 Minn. 163, 134 N. W. 640, Ann. Cas. 1913D 187; *Whittier* v. *Gormley* (1906), 3 Cal. App. 489, 86 Pac. 736; *Hayes* v. *Harmony Grove Cemetery* (1871), 108 Mass. 400; *Justice* v. *Button* (1911), 89 Neb. 367, 131 N. W. 736, 38 L. R. A. (N. S.) 1; *Fagan* v. *Hook* (1907), 134 Iowa 381, 105 N. W. 155, 111 N. W. 981; *Gibson* v. *Brown* (1905), 214 Ill. 330, 73 N. E. 578; *Cambrelleng* v. *Purton* (1891), 125 N. Y. 610, 26 N. E. 907; *Geithman* v. *Eichler* (1914), 265 Ill. 579, 107 N. E. 180. In the case last cited the court said, on page 586: "There is abundant authority that a title may be deemed good although there may be a possibility of a defect; that a defect in title which will excuse the performance of a contract for the purchase of land must be sufficient to cast a cloud on the title and render it suspicious in the minds of reasonable men; that a defect which is a mere possibility, but a very remote or improbable contingency, which, according to ordinary experience, has no probable basis, does not show a bad or unmarketable title, but the doubt must be considerable and rational— such as ought to induce a prudent man to pause and hesitate."

The decisions of the courts of appeal in this State, in so far as they have given expression as to what may be considered a marketable title, are in accord with the rule stated and authorities cited. *Smith* v. *Turner* (1875), 50 Ind. 367; *Tewksbury* v. *Howard* (1894), 138 Ind. 103, 37 N. E. 355; *McCleary* v. *Chipman* (1903),

32 Ind. App. 489, 68 N. E. 320; *Jackson* v. *Creek*
(1910), 47 Ind. App. 541, 94 N. E. 416.    Under
11. the rule stated, do the facts found show that
the abstract in question disclosed a marketable
title in appellants?    A careful consideration of the spe-
cial finding of facts on that subject forces us to the
conclusion that it did.    The court found there were some
defects in the title as shown by the abstract, *which
were not of a serious nature and did not affect the pos-
sessory title of appellants.*    It is a matter of common
knowledge that the records of our State show com-
paratively few absolutely perfect titles.    If it should
be adjudged that there are no marketable titles in this
State, except those free from defects of every nature,
whether serious or otherwise, an unreasonable rule
would be established which would accomplish no good
and result in much inconvenience and in many hard-
ships.    If, then, we are to adhere to the more reason-
able rule, certainly a title *which has no defects of a
serious nature, and none which affect the possessory
title of the owner,* ought to be adjudged marketable.
In such a title there is no room for reasonable doubt;
no question as to peaceable possession; no indication of
superior rights; nothing to suggest adverse claims, or
probable litigation.    For these, one and all, would be
matters  of a serious nature, and in such a title it is
expressly declared that defects of such a nature do not
exist.    No reasonably prudent person, willing and
anxious to perform his contract, would, in the exercise
of that prudence which business men ordinarily bring to
bear upon such transactions, refuse, or even hesitate,
to accept such a title.    This has been held to be a con-
trolling test, and when applied in this case confirms
us in the conclusion we have reached.

Appellees having failed to point out any valid reason
for the court's decision in stating its first conclusion

of law on the facts found, and our consideration of the same having failed to disclose any such reason, we have concluded that the judgment must be reversed. Because of the possible misinterpretation of the language used by the court below with reference to the kind of title shown by the abstract furnished appellees, and from a consideration of the whole case, we are of the opinion that the ends of justice will be best subserved by granting a new trial.

The judgment is reversed, with instructions to grant appellants' motion for a new trial, and for other proceedings not inconsistent with this opinion.

NOTE.—Reported in 116 N. E. 319. Vendor and purchaser: what constitutes "marketable title," 132 Am. St. 992, 38 L. R. A. (N. S.) 1, 39 Cyc 1452; delay in delivery of possession, waiver, 39 Cyc 1541; performance of contract, sufficiency of title, 39 Cyc 1517.